## ELON HOLMES v. GEORGE M. HORGER.

*Malicious prosecution—Evidence—Nunc pro tunc entry of judg-
ment of discharge.*

Where a respondent, who has taken an appeal from a conviction before a justice of the peace of the crime of larceny, appears in the circuit court, and is discharged on the ground that the value of the property is alleged in the complaint at more than $25, and the clerk fails to enter the judgment of discharge, such judgment, entered *nunc pro tunc* pending the trial of a suit brought by the respondent for malicious prosecution after his discharge, is admissible on said trial as evidence of the actual termination of the criminal prosecution.

Error to Wayne. (Reilly, J.) Argued June 9, 1893. Decided July 25, 1893.

Case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*James H. Pound,* for appellant.

*Edwin Henderson,* for plaintiff.

LONG, J. This is an action for malicious prosecution,

and on the trial in the court below plaintiff had verdict and judgment for $150.

The facts may be briefly stated: Plaintiff and defendant are both residents of the township of Springwells, Wayne county, and are near neighbors. They were born and reared in the same neighborhood, went to the same school, and, up to the fall of 1891, were always friends. In the spring of that year, defendant was elected overseer of highways, and had in his possession a road scraper belonging to his district. In November the plaintiff, who was working for his father, took his team, drove to defendant's place, entered his yard, and inquired of defendant's men where the scraper was, and, in plain view of the defendant, hitched to it, and drove away, to use it upon the highway. He used it for one or two weeks, when defendant told plaintiff's father that the scraper must be returned, or there would be trouble. On the same day defendant ordered the scraper returned he visited a justice of the peace, and told him what the plaintiff had done, and wanted a warrant for larceny of the scraper. The justice remonstrated with him, and suggested some other course to get it back. He returned the next day to the justice's office, made a complaint in writing against the plaintiff for larceny, setting forth in the complaint the value of the scraper at $49. The warrant was issued by the justice, and the plaintiff was arrested. The justice's docket shows that, upon the plaintiff's being brought before him, he found plaintiff guilty upon his plea, and suspended sentence. The plaintiff appealed the case to the circuit court, where he was discharged by order of the court, on the ground that the justice had no jurisdiction to try the cause. After the trial of the present case had been commenced, it was ascertained by counsel for plaintiff that the judgment in the case of the people against plaintiff had never been entered in the circuit. Plaintiff, by his counsel,

appeared in the circuit court in that cause, and moved the court for entry of the judgment discharging plaintiff *nunc pro tunc.* This motion was granted, and the judgment of discharge entered as of February 8, 1892, that date being prior to the time of the commencement of the present suit. On the trial plaintiff offered this judgment entry in evidence, for the purpose of showing his discharge under the criminal prosecution before the commencement of this suit. This was objected to, on the ground that it did not establish the fact of the discharge from arrest prior to the beginning of the action.

It is a general rule that a conviction before a justice of the peace is a bar to an action for malicious prosecution, and, if the party bringing the action relies upon an exception to it, he must allege the facts which create the exception, and prove them, or the conviction will be conclusive of probable cause. *Phillips v. Village of Kalamazoo,* 53 Mich. 33. It appeared upon the face of the complaint and warrant before the justice, however, that the justice had no jurisdiction to try the cause set out in the complaint, as the value of the property was alleged at a sum exceeding $25, and the circuit court very properly ordered the discharge from the facts appearing on the face of the papers. The plaintiff, after appealing his case to the circuit, appeared therein, and was actually discharged by the court, but the clerk failed to enter the judgment of discharge of record. The question is therefore presented whether the judgment of discharge entered *nunc pro tunc* is evidence of the actual termination of the criminal prosecution before commencement of suit. Counsel for defendant contends that the judgment so entered is not evidence of this fact, and cites *Whitwell v. Emory,* 3 Mich. 84. That was an action of ejectment. To rebut the plaintiffs' case, the defendant attempted to show title in himself, acquired under a judgment and execution against Reuben

Abbott, the common source.    To prove the judgment, he introduced a journal entry of the same court, which entry was originally in form as follows:

"December 6, 1841.

" On hearing counsel in this cause, on motion of George Woodruff, plaintiffs' attorney, judgment for plaintiffs on demurrer, and that it be referred to the clerk to compute the amount due on the bond mentioned in the plaintiffs' declaration, and the clerk having computed the amount due on said bond at $800, the penalty thereof, to be discharged on the payment of $624.11, and costs to be taxed."

By virtue of this entry, and the proceedings thereunder, defendant claimed title to the land in question.    This entry remained on the journal without amendment, no steps being taken respecting it, until after the commencment of the ejectment suit, and up to the day of the trial thereof, June 19, 1851, when, upon *ex parte* application of the defendant, an order was made for the amendment of the foregoing entry by the insertion between the words " at " and " $800 " of the words " $624.11, ordered final judgment for."    To the admission of the entry plaintiffs' counsel objected, and the same was received in evidence subject to the objection.    It was said by this Court:

" To the admission of the journal entry of December 6, 1841, and the amendment made June 19, 1851, the plaintiffs' counsel objected.    *    *    *    Before this amendment was made, there was clearly no final judgment entered in the cause.    *    *    *    From the subsequent action of the court, it would seem that the omission was thought to embrace the assessment of the amount due upon the bond, and that which it was conceived went to constitute a judgment, viz., the words ' ordered final judgment for,' and without which there was no evidence of an adjudication by the court.    *    *    *    The entry, with the amendment, then, comes far short of evidence of a judgment, but is rather in the form and nature of an interlocutory order or a common rule, which, by some accident, had found its way into the journal of the court.

" But the amendment was void because without the jurisdiction of the court.    At the common law, while the

proceedings are in paper an amendment can be allowed, or a judgment could be set aside before the adjournment of the term at which it was rendered; but at a subsequent term the court had no power to change the record of a previous term. By various statutes, both in England and this country, power is given to courts to amend in many cases, which they could not exercise at common law. Under our statute the court may, at the time, amend clerical errors; but that which enters into the consideration of the court, and constitutes a part of the judgment, cannot be changed after the term. Much less has a court power, under the form of an amendment, to render a judgment."

It was further said by the Court in that case that, were this error susceptible of correction by amendment, it would be necessary that the parties to be affected by it be cited before the court, especially where the matter had slept for 10 years, as any other course might work irreparable mischief to parties wholly unconscious of their situation, and jeopardize rights fairly and honestly acquired; and that, before any judgment could be perfected in the cause, it was certainly necessary that the parties to be affected should have an opportunity to be heard.

Our attention has also been called to *Ninde v. Clark*, 62 Mich. 124. That was an action of ejectment also. Plaintiff claimed title under an execution sale. It appeared that on September 29, 1866, the jury rendered a verdict in an action of *assumpsit* in the circuit court, and, without any entry of judgment, the execution was issued and levied, and the property in dispute sold thereunder. October 27, 1882, and nearly 16 years after the sale under the execution levy, the plaintiff procured a judgment to be entered on the verdict. The circuit court found against the plaintiff in the ejectment suit upon that record. It was shown upon the trial that the defendants in the ejectment suit never had any actual notice of the rendition of any judgment in the suit in which the execution issued, and it was admitted that the judgment was imperfect and

inoperative until cured by order of the court. It was said by this Court that the defendants were not bound to take notice that this correction might be made; that there might have been valid reasons in the mind of the circuit judge who tried the cause in which the judgment was rendered *nunc pro tunc* why he did not order a judgment entered upon the verdict of the jury at the time, but that there was nothing whatever appearing why he did not do so; that defendants in the ejectment suit, having neither actual nor constructive notice of any judgment upon which the execution was issued, could not be affected in their holding of the premises by the subsequent entry of a judgment *nunc pro tunc,* and, having acquired their title in good faith and for value, were entitled to the possession of the premises.

The principle in these cases is not applicable to the present. In those cases the parties were attempting to establish title through execution sales, where no judgment in fact had ever been entered, and by reason of which no execution could legally issue. The right which they asserted to the premises was dependent upon the validity of the proceedings, and no valid sale could be made except under an execution issued upon a valid judgment rendered prior to the time execution was issued. In the present case the gist of the action was the arrest and imprisonment of the plaintiff without probable cause. It is true that, under the rules of law, no action could be maintained for malicious prosecution until after the plaintiff had been legally discharged by the court. It was shown upon the trial that the plaintiff was discharged by the circuit court prior to the time he commenced this action, but, through negligence of the clerk, the judgment of discharge had not been entered. The judgment was subsequently entered of record in the circuit court, and the

plaintiff was permitted to use that judgment entry in this case as evidence of his discharge prior to the time he commenced his action. The court below very properly permitted this evidence of his discharge to be introduced on the trial of the case. It also appears from the proceedings had before the justice that he had no jurisdiction to enter a judgment of conviction under the complaint and warrant.

It is further contended that, inasmuch as the defendant stated all the facts within his knowledge to the justice which he claimed constituted the offense, and took the justice's advice whether they constituted probable cause, he was justified in making the complaint, and was not responsible thereafter for the proceedings which were subsequently taken. The court charged the jury upon that question:

"If the defendant went to the justice of the peace, and stated to him all of the facts within his knowledge, and merely followed the advice of the justice, then he cannot be held liable in this action; but it must appear from the evidence in the case that all of the facts concerning the taking of this scraper were laid before the justice, so that the conclusion that Holmes was liable for criminal prosecution was the operation of the mind of the justice based upon Mr. Horger's full statement to him, and not merely the operation of the mind of Mr. Horger."

The testimony in the case fully justified this charge, and of which the defendant has no right to complain. No one can read this record without arriving at the conclusion that the defendant, Horger, persistently urged upon the justice that a warrant issue, and that he was actuated by a feeling of hatred against Holmes, and sought his arrest to gratify his revenge. He must have known that when the plaintiff took the scraper he did not intend to steal it, but that he was to use it upon the highway upon the public work.

Some other errors are claimed. We have examined them, but do not consider them worthy of notice.

Judgment must be affirmed.

The other Justices concurred.