Garnier v. Squires.

## A. GARNIER, JR., v. JAMES M. SQUIRES.

### No. 11,750. (62 Pac. 1005.)

1. FALSE IMPRISONMENT—*Evidence of Motives.* In an action for false imprisonment, the motives of the defendant are not material so far as establishing a right of action is concerned, and evidence of good faith or lack of malice is not competent to reduce actual damages, but may be received to avoid punitive or exemplary damages.

2. ———— *Arrest without Warrant—Officer and Private Person Distinguished.* An arrest by an officer of the law without warrant will not constitute false imprisonment if the officer arresting had reasonable grounds to believe that a felony had been committed; but a private person arrests without a warrant at his peril, and it will be false imprisonment unless it can be shown that a felony has actually been committed.

3. ———— *Arrest to Compel Payment of Money Unjustifiable.* The law contemplates that an arrest, either by an officer or a private person, with or without a warrant, is a step in a public prosecution, and it must be made with a view of taking the person arrested before a magistrate or judicial tribunal for examination or trial; and if the purpose of the arrest and detention is forcibly

to compel the payment of money, and not to accomplish the prosecution and punishment of the prisoner by legal methods, the restraint is unjustifiable and illegal.

Error from Wyandotte court of common pleas ; W. G. HOLT, judge.   Opinion filed December 8, 1900. Reversed.

*L. C. True,* and *Trickett & Dail,* for plaintiff in error.

*James S. Gibson, George W. Littick,* and *Hale & Craig,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J. :  A. Garnier, jr., brought an action against James M. Squires, setting up three causes of action :  (1) For slander, in falsely charging him with the larceny of $500 ;  (2) for false imprisonment, by holding him at the point of a revolver in illegal restraint for a period of about thirty minutes ; and (3) for an unlawful search of plaintiff's premises ; and he placed the damages sustained at $4500.

The facts out of which the controversy arose are substantially as follows :  On the night of February 14, 1898, Squires claimed that when he retired he had $500 in his vest pocket ; that it was taken therefrom at some time during the night ; that Garnier was in the house and knew that defendant had the money ; that the doors of the house were securely locked, and there was no one else in the house who could or would have taken the money ; and he charged that Garnier stole it from him.  On the next morning after missing his money, Squires went to Garnier's place of business and pointed a loaded revolver at Garnier's head and demanded $500, which he said Garnier had stolen from him.  He admits in his pleading and in his testimony that he followed Garnier to his office, accused

him of stealing his money, and that he threatened to shoot him if he did not unlock the safe and give him the money.

The plaintiff says that about nine o'clock in the morning, and while he was busy, some one approached him with an oath, saying : "If you do n't give me that $500 you stole from me I will blow you full of holes," and that when he looked around he was facing a revolver in the hands of Squires ; that the latter held a revolver on him and made him unlock the safe ; that he was scared and thought Squires was going to kill him. The money was not found in the safe or on the premises ; and no direct proof was offered of the stealing of the money by any one. The defendant alleged that he honestly believed, and still believes, that Garnier stole the money from him.

After the testimony was received the court instructed the jury :

"If you believe from the evidence that the defendant lost said sum of $500, and had reasonable grounds for believing that the plaintiff had stolen it from him, and, without malice toward the plaintiff, but in an endeavor to recover said sum of $500, went to the place of business of the plaintiff and there demanded a return of said money, and there accused the plaintiff of having stolen said money, and detained the plaintiff by pointing at him a loaded revolver, then you should render a verdict for the defendant."

Objection was made to this instruction when it was given, and it constitutes the principal ground assigned for the reversal of the judgment that was rendered against the plaintiff. It was intended to apply to the testimony given in support of the count for false imprisonment, and we think it does not correctly state the law applicable to that phase of the case. The testimony in the case justified a charge as to what

were the constituent elements of false imprisonment, chief of which are the detention and restraint, and the unlawfulness of such detention and restraint. The testimony for the plaintiff tended to show actual restraint for a short time, accomplished through fear of violence and bodily harm. It is true there was no judicial proceeding, no warrant of arrest, nor any manual touching or taking into custody. But these are not essential elements.

"False imprisonment is necessarily a wrongful interference with the personal liberty of an individual. The wrong may be committed by words alone or by acts alone, or by both, and by merely operating on the will of the individual or by personal violence, or by both. It is not necessary that the individual be confined within a prison or within walls, or that he be assaulted or even touched. It is not necessary that there should be any injury done to the individual's person, or to his character, or reputation. Nor is it necessary that the wrongful act be committed with malice or ill will, or even with the slightest wrongful intention. Nor is it necessary that the act be under color of any legal or judicial proceeding. All that is necessary is that the individual be restrained of his liberty without any sufficient legal cause therefor, and by words or acts which he fears to disregard." (Comer v. Knowles, 17 Kan. 436.)

As will be seen, malice and wilfulness are not essential elements of false imprisonment, and the motives of the defendant, whatever they may have been, are not material to the case so far as making out a right of action is concerned, and can never be material except where something more than compensatory damages are sought. If exemplary damages are sought, proof of malice in making an arrest or imposing restraint is competent. In this instruction the court made the good faith of the defendant and the absence of malice a justification for the restraint.

Another fault in the instruction is that the mere belief that the defendant had stolen money from him justified the defendant in holding him up at the point of a revolver in an endeavor to recover the money. An arrest by an officer of the law without a warrant will not constitute false imprisonment if the officer arresting has reasonable grounds to believe that a felony has been committed; but a private person arrests without a warrant at his peril, and it will be a false imprisonment unless it can be shown that a felony has actually been committed. (*Wakely v. Hart*, 6 Binn. [Penn.] 318; *Beckwith v. Philby*, 6 Barn. & Cres. 635; *Holley v. Mix*, 3 Wend. [N. Y.] 351; *Allen v. Wright*, 8 Car. & P. 522; *Burns v. Erben*, 40 N. Y. 463; *Hawley v. Butler*, 54 Barb. [N. Y.] 490; 12 A. & E. Encycl. of L., 2d ed., 740.)

The instruction given does not make the actual commission of a felony an essential element of a justification of the imprisonment. It makes the mere loss of the money by the defendant and a belief by him that the plaintiff had taken it a sufficient excuse for the demonstration with a revolver and a compulsory restraint of the plaintiff, while the authorities unite in holding that in such case nothing short of proving the commission of a felony will justify the arrest. The law contemplates that an arrest either by an officer or a private person, with or without warrant, is a step in a public prosecution, and must be made with a view of taking the person before a magistrate or judicial tribunal for examination or trial; and an officer even subjects himself to liability if there is an unreasonable delay after an arrest in presenting the person for examination or trial. The language of the instruction, as will be observed, does not contemplate an arrest for the purpose of examination or trial or

any other step toward a public prosecution and punishment. On the other hand, it appears to sustain the theory that a man who has lost money and believes that another has stolen it may take the law into his own hands, go to the house or place of business of the suspected person, and at the point of a revolver detain him and demand from him a return of the lost money. Suspicions cannot be tested nor beliefs verified in this high-handed way, as such a course would naturally provoke breaches of the peace and bloodshed. Money cannot be collected nor property recovered by one person from another by force or threats of force, as the instruction would imply, and if the purpose of the defendant was forcibly to compel the payment of the money, and not to accomplish the arrest, prosecution and punishment of the plaintiff by legal methods, the restraint was unjustifiable and illegal.

The ninth instruction was as follows :

"The burden of proof is upon the defendant to establish by a preponderance of the evidence that the words spoken of and concerning the plaintiff were true ; and if the evidence bearing upon such matters, if any there be, is evenly balanced, or if it preponderates in favor of the plaintiff, then the defendant would be justified in speaking such words of and concerning the plaintiff."

Evidently there was an inadvertent misuse or omission of words in this instruction. If the burden of proof was upon the defendant to show that the words spoken were true, and the testimony preponderated in favor of the plaintiff, certainly the defendant would not be justified in the speaking of the words.

For the errors pointed out the judgment of the trial court will be reversed, and the cause remanded for a new trial.