No. 30,031.

GILBERT TORSON, *Appellant*, v. PAUL BAEHNI, CHARLES M. FLETCHER and THE NATIONAL SURETY COMPANY, *Appellees*.

(5 P. 2d 813.)

Opinion filed December 12, 1931.

*Edward Rooney,* of Topeka, and *M. A. Bender,* of Holton, for the appellant.

*E. D. Woodburn,* of Holton, *Henry L. Jost* and *Mord M. Bogie,* both of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action against the sheriff of Jackson county, his bondsmen and his deputy for damages for false imprisonment.

The action was based upon the following points in the main: Arresting the plaintiff without a warrant; arresting and taking plaintiff in custody at a point outside of Jackson county; that the crime, if any, was committed in Brown county; confining plaintiff in the jail of Jackson county from Saturday night until Monday morning without a warrant and without taking him before a magistrate; and an issue raised by an attack on the answer was whether the fact that the officer at the time of making the arrest had probable cause to believe the plaintiff guilty should constitute a defense in an action of this kind. The verdict and judgment were in favor of the defendants, and the plaintiff appeals, assigning error involving the above-named points and others.

The plaintiff was a resident of Brown county and was a brother-in-law of one Lee Sheeley, who was detained in the county jail of Jackson county charged with a felony. Plaintiff visited for some time with Sheeley in the jail Thursday evening. Friday night Sheeley broke jail and went to plaintiff's home in Brown county, arriving there early Saturday morning. Plaintiff was going past a railroad station on business, took Sheeley with him to the station and loaned him money to purchase a ticket to Nebraska. The deputy sheriff pursued the escaped prisoner to plaintiff's home, arriving there in the afternoon, and upon learning of the plaintiff's having taken him to the railroad station and loaning him money to get out of the state, arrested plaintiff without a warrant and took him to the jail of Jackson county, arriving there some time Saturday night, where he remained until Monday morning, when he was taken before a magistrate. There he was charged in a complaint signed by the deputy sheriff with the crime of aiding and assisting a prisoner lawfully detained in jail for a felony to escape therefrom. Plaintiff waived a preliminary hearing and gave bond for his appearance at court. The charge was later dismissed, after which this action was commenced.

In addition to a general verdict for the defendants in this case the jury answered the following special questions:

"1. Did the defendant, Chas. M. Fletcher, as undersheriff of Paul Baehni, the sheriff of Jackson county, Kansas, take the plaintiff into custody in Brown county, Kansas, and confine him in jail in Jackson county, Kansas?  A.  Yes.

"2. If you answer the preceding question 'yes,' did the said Chas. M. Fletcher at the time have a warrant in his hands for the taking of plaintiff into custody?  A.  No.

"3. Did sheriff, Baehni, instruct his undersheriff, Chas. M. Fletcher, to bring the plaintiff in for investigation?  A.  Yes.

"4. Did the plaintiff counsel, aid or abet Lee Sheeley in his escape from the jail of Jackson county?  A.  No.

"6. Did the defendant, Chas. M. Fletcher, at the time of the arrest of the plaintiff, have probable cause to believe that the plaintiff had aided, assisted, counseled, or abetted Lee Sheeley in his escape from imprisonment?  A.  Yes."

As a ground for the answer to question No. 4, there was considerable evidence to show that when Sheeley arrived at the home of the plaintiff early Saturday morning he told plaintiff and others that he had been released from jail by giving an $800 bond signed by his uncle, and plaintiff testified that when he took him to the railroad station and loaned him money he did not know he had escaped jail.

It is not seriously contended that the matter of the arrest of the plaintiff without a warrant would, standing alone, make the sheriff or his deputy liable for false imprisonment, as it has been held otherwise in *Garnier v. Squires,* 62 Kan. 321, 62 Pac. 1005; *Smith v. Hern,* 102 Kan. 373, 170 Pac. 990, and in other decisions of this state, but appellant considers and urges this fact together with the fact that the arrest was made across the line in Brown county, insisting that the statutes of Kansas give the sheriff no authority to act outside his own county without a warrant, citing the statutes and a number of decisions, among which is *Marsh v. Express Co.,* 88 Kan. 538, 129 Pac. 168, where it was held in an action to recover a reward offered for the arrest and conviction of the party guilty of a certain murder that it was not the official duty of a deputy sheriff of a particular county to arrest a supposed felon in another county without a warrant, and on that account permitted the deputy sheriff to collect the reward, which he could not have done if the matter of making the arrest had been an official duty within his own county.  The general doctrine is that the powers of officers are limited to the territory of which they are officers, and any powers beyond such limits must be by reason of a grant thereof.  (*Morrell v. Ingle,* 23 Kan. 32.)

R. S. 62-604 authorizes a magistrate to issue a warrant directed to an officer of his own county or of the county in which the offense was committed requiring the offender to be apprehended and taken before a magistrate of the county where the offense was committed. The next section, R. S. 62-605, is as follows:

"If any person against whom a warrant may be issued for an alleged offense committed in any county shall, before or after the issuing of such warrant, escape from or be out of the county, the sheriff or other officer to whom such warrant may be directed may pursue and apprehend the party charged in any county in this state, and for that purpose may command aid and exercise the same authority as in his own county."

A careful reading of this section reveals the plain legislative intent of an extension of power or extension of territory over which officers may exercise their powers for the limited purpose of apprehending not only those who may have escaped from the county, but also those who may be out of the county. Observe further the apparently permissive feature of this extension of territory for apprehension purposes in the language as to the issuance of a warrant not in the imperative terms as in the preceding section. These two sections of the statutes largely form the basis of the ruling in the March case, *supra*, wherein the distinction is made between an official duty to make the arrest, and where no obligation officially exists to perform such service, as follows:

"It is contrary to public policy to allow an officer to recover a reward for the performance of an official duty. . . .

"On the other hand, no rule of public policy forbids such recovery where the officer is under no obligation arising from his official character to perform the service." (*Marsh v. Express Co.*, 88 Kan. 538, 541, 129 Pac. 168.)

The officer in that case was a deputy sheriff, as in this case, and made the arrest outside of his county without a warrant. He had the statutory authority or permission to do so, but it was not an official duty of his to be performed as it would have been if the party to be arrested had been in his own county.

Appellant insists that since the jury found the plaintiff was not guilty of aiding or assisting Sheeley in making an escape, there could be no further defense to the action of the plaintiff for false imprisonment, that reasonable grounds for the officer believing the plaintiff to be guilty was not a justification nor a legal defense. We think it could be a proper defense to submit to the jury under appropriate instructions.

"An arrest by an officer of the law without warrant will not constitute false imprisonment if the officer arresting had reasonable grounds to believe that a felony had been committed; . . ." (*Garnier v. Squires,* 62 Kan. 321, syl. ¶ 2, 62 Pac. 1005.)

"An officer may arrest a person without a warrant where the officer has reasonable grounds to believe that a felony has been committed by the person arrested." (*Smith v. Hern,* 102 Kan. 373, syl. ¶ 2, 170 Pac. 990.)

The waiving of the preliminary examination which prevented the necessity of a finding of probable cause to believe the defendant guilty of the crime charged against him and the ultimate dismissal of the charge were proper matters for the consideration of the jury in this case and did not as matters of law determine the issues herein. (*Ross v. Hixon,* 46 Kan. 550, 26 Pac. 955.)

The imprisonment from Saturday night to Monday morning without being taken before a magistrate is a question for the jury as to the delay being unreasonable. It is not expected that magistrates hold court on Sunday, and their attempted judicial acts on that day are illegal.

"A justice of the peace has no authority to hold court or conduct a trial on Sunday.

"The accepting of a plea of guilty by one charged with a misdemeanor, and entering judgment of sentence thereon are judicial acts, and void if performed on Sunday." (*In re Clyde Devault, Petitioner,* 114 Kan. 913, syl. ¶¶ 1, 2, 221 Pac. 284. See, also, 25 R. C. L. 1449.)

Evidently the jury thought this intervening time was not unreasonable, and we are not persuaded otherwise.

In *Railway Co. v. Hinsdell,* 76 Kan. 74, 90 Pac. 800, there was a delay after arrest before procuring a warrant and the party was later discharged on a hearing before the magistrate, and the court said in the action by him for false imprisonment that—

"We see no occasion for holding that the mere act of discharge, in and of itself, changes the essential character of the restraint previously exercised. An arrest lawfully made without a warrant justifies holding the prisoner long enough to procure a warrant or to present him before a magistrate, and no longer. When without just excuse his detention is prolonged beyond the time reasonably necessary for that purpose it then ceases to be lawful and becomes unlawful, not from the beginning, but from that moment." (p. 80.)

The case of *Hanger v. Woodward,* 112 Kan. 388, 210 Pac. 1114, cited by appellee, was an action for damages against the sheriff who had seized an automobile under the liquor law without a warrant, but later one was issued on his own complaint, and upon a hearing

the car was returned to the owner. The only question involved there, however, was the legality of the holding after the issuance of a warrant, and a verdict and judgment in favor of the sheriff was affirmed.

The question of the venue of the crime charged against the plaintiff being in Brown county instead of Jackson county is not a vital matter at issue, the way the case is now and here presented. The escape by the prisoner was in Jackson county. It was a continuing offense on his part as he traveled through Brown and other counties. The definite aid given was in Brown county, and yet it was connected in the evidence with a long private conference in Jackson' county the night before the escape, which was a circumstance to be considered; and again in cases of this kind there is no need of the personal presence of the accused to constitute an offense of this character, as if the plaintiff had sent the prisoner by another person or by mail a file which aided in making the escape.

"The presence of the offender within the county where a crime is committed is not always essential, but some portion of the act, or of the omission to act, must have taken effect therein." (16 C. J. 200.)

Notwithstanding the formal objection to the consideration of errors in the giving and refusing to give instructions, we have examined the instructions given and refused and find no error in that connection.

The judgment is affirmed.

SLOAN, J., not sitting.