JAMES DONALD HOUSE, Plaintiff-Appellant, *v.* GILBERT ANE, GERALD LEE, LANCE CARREIRA, and CITY AND COUNTY OF HONOLULU, Defendants-Appellees

NO. 5513

JULY 9, 1975

RICHARDSON, C.J., KOBAYASHI, OGATA, AND MENOR, JJ., AND RETIRED JUSTICE LEWIS ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY OGATA, J.

This is an action for false imprisonment and malicious prosecution. Both claims stem from the same 1971 incident, as a result of which plaintiff was arrested for and charged with disorderly conduct, a misdemeanor.[1] At the close of plaintiff's case the circuit court directed a verdict for defendants on both counts, and plaintiff has appealed from the judgment. We affirm.

Based upon the format of the opening brief, which presents to us plaintiff's arguments on malicious prosecution first, followed by his arguments on the subject of false imprisonment, we proceed to consider and dispose the subject matter of this appeal in the reverse order of these claims as set forth in the complaint. We take up first plaintiff's malicious prosecution claim set forth under count II of his complaint and then follow with plaintiff's false imprisonment claim under count I.

## I. MALICIOUS PROSECUTION

Defendants contend that plaintiff's conviction of disorderly conduct in the district court of Honolulu,[2] even though appealed to the circuit court where the charge was dismissed,[3] is a bar to the plaintiff's action for damages for malicious prosecution on the ground that the conviction conclusively established the existence of probable cause. Recognizing the nonapplicability of this asserted rule if the con-

---

[1] HRS §§ 772-2 and 772-3, subsequently repealed by Act 9, S.L.H. 1972, which enacted the Hawaii Penal Code.

[2] The conviction was on a charge of "use [of] offensive, abusive, threatening, or insulting language, conduct or behavior, whereby a breach of the peace might have been occasioned * * * in violation of section 772-2 of the Hawaii Revised Statutes."

[3] The appeal was taken under former HRS § 641-1, which at the time of the conviction, June 25, 1971, allowed an appeal to the circuit court for a trial de novo. See note 5, infra. The dismissal was entered on the records of the circuit court on March 29, 1972, for lack of prosecution.

viction was obtained by fraud, perjury or other corrupt means, defendants further argue that there is not a scintilla of evidence that such was the case.

The circuit court directed the verdict for defendants on both claims because of insufficiency of the evidence presented by plaintiff. As we held in *Inter-Island Resorts v. Akahane*, 44 Haw. 93, 96, 352 P.2d 856, 859 (1960), and *Coelho v. Fernandez*, 46 Haw. 578, 582, 384 P.2d 527, 529-530 (1963), this does not preclude the appellate court from affirming on a different ground, and we proceed to consideration of the rule asserted by defendants. It was urged in the trial court as one of the grounds of the motion for a directed verdict as to the claim for malicious prosecution.

This rule is supported by the *Restatement of Torts*, § 667(1), and the weight of authority.[4] However, plaintiff urges us not to adopt it for reasons now considered.

At the time involved, district courts were not courts of record.[5] Plaintiff cites *Chapman v. City of Reno*, 85 Nev. 365, 455 P.2d 618 (1969), which applied the minority rule that the conviction was only prima facie evidence of probable cause, on the ground that the convicting court was not a court of record and the appeal to a court of record for trial de novo had resulted in an acquittal. The court said:

> "The reason for our rule is that without a record it is difficult, if not impossible, to know what transpired in the minor court. Except for the recollection of witnesses, and whatever the concise, summary court minutes might disclose, there is no other proof available of the circumstances surrounding the conviction, including evidence of fraud, perjury or other corrupt means. Those factors, balanced against an acquittal in the higher court, pre-

---

[4] See Ann.: 86 A.L.R.2d 1090.

[5] Effective January 1, 1972, district courts became courts of record, HRS § 604-17, as amended by Act 188, S.L.H. 1970, and Act 144, S.L.H. 1971. At the same time, the provision for appeal to the circuit court for trial de novo (see note 3, *supra*) was deleted by amendment of former HRS § 641-1. Act 89, S.L.H. 1972 repealed that section, and provided for appeals from the district court in criminal cases by a new section renumbered HRS § 641-12 (1974 Supp.).

sided over by a trained judicial officer with the proceedings fully reported, justify our adoption of the announced rule." 85 Nev. at 369, 455 P.2d at 620.

The above stated reasons do not apply here. This court takes judicial notice that transcripts of proceedings in the district court of Honolulu were available[6] even before it became a court of record. In the present case, the transcript of the trial shows the availability of a transcript of the criminal proceedings in the district court. The district magistrates of Honolulu, as they then were called, were required to be attorneys licensed to practice in all the courts of the state.[7] We note that in *Schaefer v. Hayes*, 30 Wis. 2d 424, 141 N.W.2d 210 (1966), the Supreme Court of Wisconsin held on the point reserved in *Tarantino v. Griebel*, 9 Wis. 2d 37, 100 N.W.2d 350 (1960), that a conviction by a court not of record was conclusive, when the justice of the peace who adjudged the plaintiff guilty was a lawyer.

In the matter of ultimate disposition of the criminal case, *Schaefer v. Hayes, supra,* is very similar to the present case. *See also, Bumphus v. Smith,* 189 A.2d 130 (App. D.C. 1963); *Priddy v. Cook's United Department Store,* 17 N.C. App. 322, 194 S.E.2d 58 (1973). In the *Restatement of Torts,* it is stated in Comment b on sec. 667(1):

> "b. The rule stated in this Subsection applies both where the proceedings are abandoned after the conviction has been set aside by the appellate court and where, after a conviction has been set aside, the accused is acquitted upon a second trial."

Plaintiff's main reliance is upon the argument that the majority rule is a bad rule, which this court should not adopt. Plaintiff urges that he will not have had his day in court unless a jury hears his version of the incident and makes a decision based upon his version versus the versions given by the defendants. Of course, the majority rule makes the trial court

---

[6] See HRS §§ 604-17 and 606-9, as they read prior to Act 188, S.L.H. 1970.

[7] HRS § 604-1, as it read prior to Act 188, S.L.H. 1970.

in the criminal case the arbiter of the facts as well as the law when the criminal case is tried without a jury.

Under the law as it read at the time involved, disorderly conduct was a misdemeanor and a jury trial could have been demanded at the option of the plaintiff at the time of arraignment on the criminal charge.[8] At the present time disorderly conduct is a petty misdemeanor,[9] and there is no right of jury trial. However, we do not base our decision on the proposition that plaintiff's argument falls of its own weight in this particular case. Instead, we reject the argument that fact finding by a judge when provided for by law is not entitled to the same weight as fact finding by a jury. As stated in Comment a on *Restatement of Torts* § 667(1):

"a. The rule stated in this Subsection is applicable not only where the accused has been convicted by a court consisting of a judge and jury or by a judge sitting as the trier of facts as well as of law, but also where the conviction is by a magistrate in a case in which he has summary jurisdiction."

The majority view is founded on "grounds of public policy in vindication of the dignity and authority of judicial tribunals constituted for the purpose of administering justice according to law * * *." *Crescent City Live Stock Company v. Butchers' Union Slaughter-House Company*, 120 U.S. 141, 159 (1887). As stated in *Tarantino v. Griebel, supra*, 9 Wis. 2d at 42, 100 N.W.2d at 353:

"It is true the judgment in the district court * * * has no effect so far as the conviction of the respondent is concerned, but the reversal of the conviction on appeal or the superseding of that conviction by an acquittal after a trial de novo does not destroy the fact, for the purpose of determining probable cause, that there was a conviction in the district court. * * *"

---

[8] HRS § 604-8; see also H.R.Cr.P. Rule 5(e) (2).

[9] Section 1101, Hawaii Penal Code, enacted by Act 9, S.L.H. 1972, codified by the Revisor of Statutes as HRS § 711-1101. For the District Court rule comparable to H.R.Cr.P., Rule 5(e) (2) cited in note 8, see D.C.R.Cr.P., Rule 24(7).

We come now to the question of whether fraud, perjury or other corrupt means was employed, thus rendering the conviction no bar to plaintiff's action. Plaintiff testified that he "felt that the testimony given against me in the District Court was untrue and that this wasn't the way it happened * * *." At most, a conflict in the evidence was shown, with plaintiff testifying to one version of what occurred and defendants to another. Such conflicts in the evidence are commonplace. What is required is proof that defendants employed knowing falsity, duress, or other undue means, such as was adduced in *Moore v. Winfield*, 207 N.C. 767, 178 S.E. 605 (1935). We hold that the proof was insufficient to take the case out of the rule,[10] and that the district court conviction conclusively established probable cause.

## II. FALSE IMPRISONMENT

The record shows affirmatively that the plaintiff was arrested without a warrant by these defendants who were police officers at approximately 9:00 p.m. on April 14, 1971, on a charge of disorderly conduct. Subsequently, on June 25, 1971, after a trial, plaintiff was found guilty of this charge in the district court of Honolulu. He then appealed his conviction to the circuit court for trial de novo. On March 29, 1972, the circuit court dismissed the charge for lack of prosecution.[11]

Defendants' primary contention in support of sustaining the directed verdict rendered by the court below is that plaintiff was lawfully arrested without a warrant for the offense of disorderly conduct committed in the presence of the defendants who had identified themselves to plaintiff as police officers before the arrest took place. If defendants are able to sustain such a contention, the arrest was privileged.

---

[10] Though the court directed verdict for the defendants without passing upon the effect of the district court conviction, the sufficiency of the evidence to negate the effect of that judgment presents a point of law which we ourselves may adjudge. *Cf.*, State v. Cannon, 56 Haw. 166, Note 2, No. 5586, February 24, 1975.

[11] See footnote 3, *supra*.

*Lundeen v. Renteria,*___Minn.___, 224 N. W.2d 132 (1974); *Restatement of Torts,* Vol. I, § 118, Comment b. The rely on HRS § 708-3, which specifically authorizes: "Anyone in the act of committing a crime, may be arrested by any person present, without a warrant."

Under this statute it is quite clear that an arrest without a warrant is lawful if the offense is actually committed in the presence of a police officer. *Territory v. Sing Kee,* 14 Haw. 586 (1903). There has been no further authoritative construction of this statute in this jurisdiction. At common law a peace officer was authorized to arrest without a warrant for a misdemeanor offense, which amounted to a breach of the peace and which was being committed in the presence of the officer. *People v. Dixon,* 392 Mich. 691, 222 N.W.2d 749 (1974); *Cave v. Cooley,* 48 N.M. 478, 152 P.2d 886 (1944). A peace officer acted at his peril even though he had probable cause to believe that such a misdemeanor was being committed in his presence, if no such offense was in fact committed.

Most jurisdictions have held statutes similar to HRS § 708-3 to grant to the police officer the authority to arrest without a warrant for a misdemeanor offense which he personally sees that in all probability is being committed in his presence. *People v. Dixon, supra; Miller v. State,* 462 P.2d 421 (Alaska 1969); *Smith v. Hubbard,* 253 Minn. 215, 91 N.W.2d 756 (1958); *Coverstone v. Davies*[12] 38 Cal.2d 315, 239 P.2d 876, *cert. den.* 344 U.S. 840 (1952); *Cave v. Cooley, supra; Ryan v. Conover,* 59 Ohio App. 361, 18 N.E.2d 277 (1938). We agree with the legal philosophy expressed in these cases, particularly in *Coverstone v. Davies, supra,* where the California Supreme Court said:

"When an arrest for a misdemeanor is made upon the complaint of one other than the arresting officer, it is proper to require the securing of a warrant to justify the arrest. Ware v. Dunn, supra, 80 Cal. App.2d 936, 183 P.2d 128. However, to make the same requirement, when

---

[12] The arrest statute involved in this case was similar in wording to HRS § 708-3. The California legislature amended the statute in 1957 to authorize warrantless arrests where the officer reasonably believes that an offense is being committed or attempted in his presence. Penal Code § 836.

the officer sees that in all probability a public offense is being committed in his presence, would be to hamper law enforcement officers in their every day enforcement of the law. Peace officers would be reluctant to make arrests for fear that they would be held liable for having made an honest and reasonable mistake. It is thus manifest that the day to day problems of law enforcement require that peace officers be allowed to act without fear of being held liable upon the facts as they see them, provided such facts would lead a reasonable person to conclude that he was witnessing the commission of a public offense by the person arrested." 38 Cal.2d at 321-322, 239 P.2d at 879-80.

We conclude that under HRS § 708-3, a police officer may lawfully arrest a person without a warrant if the officer has probable cause[13] to believe an offense is being committed in his presence, even though it be a misdemeanor. The probable cause which will justify such an arrest for a misdemeanor without a warrant must be based on the officer's personal knowledge acquired at the time through his senses, or inferences properly drawn from such knowledge. It is believed that such a construction of the statute harmonizes with what society would deem necessary to protect itself from lawlessness by facilitating the apprehension of criminals and preventing the commission of crimes. The countervailing interest of the community in the freedom of the individual citizens from arbitrary and capricious seizure is balanced by the requirement of probable cause.[14]

We stated in *Lopez v. Wigwam Dept. Stores*, 49Haw. 416, 421 P.2d 289 (1966), that probable cause is an affirmative

---

[13] We said in State v. Texeira, 50 Haw. 138, 143, 433 P.2d 593 (1967), quoting from Brinegar v. United States, 338 U.S. 160, 176 (1949): "The rule of probable cause is a practical, non-technical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of officers' whim or caprice."

[14] See Harper & James, The Law of Torts, Vol. 1, p. 275.

defense to a claim for false imprisonment.[15] A similar principle of law was eloquently expressed by the United States Supreme Court in *Pierson v. Ray*, 386 U.S. 547, 555 (1967), wherein it is stated: "Under the prevailing view in this country a peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved. (Citations omitted) A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does."

Did the defendants have probable cause to believe that plaintiff was committing the offense of disorderly conduct in the presence of defendants? We think so. The warrantless arrest of the plaintiff was made by the defendants who, according to their account, saw and observed what reasonable persons would believe to be an offense being committed in their presence.[16] The fact that it later turns out that they were mistaken in their belief would not convert the arrest based upon probable cause into an unlawful one. *Pierson v. Ray, supra; Cambist Films, Inc. v. Duggan*, 475 F.2d 887 (3rd Cir. 1973); *Boca Raton v. Coughlin*, 299 So. 2d 105 (Fla. Ct. App. 1974); *Beyer v. Young*, 513 P.2d 1086 (Colo. Ct. of App. 1973); *Wells v. Gaspard*, 129 So. 2d 245 (La. Ct. of App. 1961). Moreover, the record shows that plaintiff was charged for and convicted of the offense for which he was arrested. His trial took place in the district court which had jurisdiction over the person as well as the offense in question. A conviction in a criminal case requires that guilt must be proven by the highest quantum of proof, *i.e.*, beyond a reasonable doubt. Once such a showing has been made, in the absence of fraud, perjury or other corrupt means in securing the conviction, we

---

[15] Rule 8(c), H.R.C.P., requires that all affirmative defenses shall be set forth in the answers. However, since this question was not raised in the court below, we deem it to be waived.

[16] Plaintiff's argument is that whether there is probable cause to justify his arrest depends upon conflicting evidence, that is, whether his or the defendants' version of the incident is believed by a jury.

believe, as a matter of law, that in the subsequent action for false imprisonment the defendant should be able to convince the trier of fact, by a preponderance of the evidence, that probable cause existed for the arrest of the plaintiff. This is so, notwithstanding the later appeal and dismissal of his conviction. Such is the rule announced in this case to apply in the malicious prosecution action. There is no reason why the same rule should not apply to the false imprisonment action.

We believe that the modern trend of the cases and the better view sustain the position we have taken. Plaintiff's claim for false imprisonment is almost identical to the case decided by the Supreme Court of Kansas in *Hill v. Day,* 168 Kan. 604, 215 P.2d 219 (1950). The plaintiff in that case brought an action against defendant, Day, the chief of police of the city of Salina, Kansas, alleging a claim for malicious prosecution and a claim for false arrest. There the petition alleged that plaintiff entered the Cafe Casa Bonita located in the city of Salina, wherein he had some conversation with the defendant; that soon thereafter plaintiff was wrongfully arrested by defendant without a warrant and taken to the police station; that plaintiff was not informed of the cause of the arrest until he was booked at the police station when the defendant revealed that the charge against plaintiff was disorderly conduct. Plaintiff further alleged that he was briefly confined in the city jail until one of his friends posted bail of $25.00, after which he was released. Thereafter, as in the case at bar, the plaintiff was tried for the disorderly conduct charge before the police court, and he was found guilty. Plaintiff was fined $25.00, and ordered to pay $17.00 for costs. He appealed his conviction to the district court for a trial de novo, and eventually the criminal case was dismissed.

In *Hill v. Day, supra,* the court stated that the trial court properly ruled that the petition did not state a cause of action because it appeared on its face that the plaintiff had been tried and convicted in the police court of the charge for which he was arrested, notwithstanding his subsequent acquittal resulting from the dismissal in the district court on appeal. The Kansas Supreme Court in this case said:

"The petition (¶3) alleges that plaintiff was tried and convicted in the police court of the city of Salina of the offense for which he was arrested and charged. Does this fact satisfy the rule that a showing of probable cause for such an arrest and prosecution is a complete defense to an action for malicious prosecution or false arrest where there is no showing of fraud or perjury in the conduct of the trial and obtaining the conviction? We think so, and have so held in a malicious prosecution case: 'The third count in the petition is held to state no cause of action because it shows that the prosecution of plaintiff resulted in his conviction; notwithstanding his appeal and acquittal in the district court, the conviction in the police court is conclusive of probable cause.' Smith v. Parman, 102 Kan.787 (Syll.¶3), 172 P. 33, 34." 168 Kan. at 609, 215 P.2d at 223.

The court further said that such a conviction, obtained without perjury, fraud or corruption, would conclusively show that probable cause existed and constitutes a good defense:

"Having concluded that such a judgment of conviction amounts to a conclusive determination that probable cause for the arrest and prosecution existed (absent any showing of perjury, fraud or corruption in obtaining the judgment), it is well settled law that a showing of such probable cause as to the guilt of the person arrested is a proper and legal defense to an action for malicious prosecution or for false arrest and imprisonment. Torson v. Baehni, 134 Kan. 188, 5 P.2d 813. Therefore, when the petition shows upon its face that there has been such *a judgment of conviction*, it fails to allege a cause of action for either malicious prosecution or unlawful arrest and imprisonment." 168 Kan. at 610, 215 P.2d at 223-24.

The Supreme Court of Michigan also held unanimously in *Doak v. Springstead,* 284 Mich. 459, 279 N.W. 898 (1938), which was an action for false imprisonment, that a conviction not procured by false or fraudulent testimony or other unlawful means is conclusive evidence of probable cause, even though afterwards on appeal the conviction is set aside or the

plaintiff acquitted. It appeared in that case that plaintiff was arrested without a warrant by a police officer in the city of Birmingham for the commission of an alleged misdemeanor. Plaintiff was then tried in the municipal court where he was found guilty of the charge. Subsequently, he appealed to the circuit court where he was exonerated by a jury.

The Michigan Supreme Court explicitly rationalized in 284 Mich. at 460-461, 279 N.W. at 898-899:

> "The general rule is well stated in 1 Cooley on Torts, p. 397, § 118:
>
> 'A conviction of the accused is conclusive evidence of probable cause, unless it was obtained by fraud or unfair means, which may be shown in rebuttal; and this is true though afterwards, on appeal, the conviction is set aside or the accused acquitted.'
>
> In Thick v. Washer, 137 Mich. 155, 100 N.W. 394, we said (page 395):
>
> 'The cause is ruled by the case of Phillips v. Village of Kalamazoo, 53 Mich. 33, 18 N.W. 547, and Holmes v. Horger, 96 Mich. 408, 410 56 N.W. 3. These cases sustain the general rule that "a conviction in criminal proceedings is conclusive proof of probable cause, unless procured by false or fraudulent testimony or other unlawful means," and "the rule applies, although the judgment of conviction was subsequently reversed by a higher court, and the plaintiff acquitted and discharged." ' "

*Accord, Arnold v. Jarvis*, 367 Mich. 59, 116 N.W.2d 38 (1962).

We are aware of the holding in *Collins v. Owens*, 77 Cal. App. 2d 713, 176 P.2d 372 (1947). That case has been substantially eroded by *Coverstone v. Davies, supra,* and *Whaley v. Jansen*, 208 Cal. App. 2d 222, 25 Cal. Rptr. 184 (1962).

Our holding in this case today on false imprisonment is not contrary to or in any way inconsistent with *State v. Butler*, 51 Haw. 180, 455 P.2d 4 (1969), where we held that the evidence in that case was insufficient to sustain the conviction of the defendants for the offense of disorderly conduct. We emphasize that in *Butler*, we did not hold that what the police observed in that case did not amount to probable cause which

 

would have justified the warrantless misdemeanor arrest of the defendants.

Since probable cause is a concept based upon practical considerations, a mistake of fact as to the conduct of the accused should not prevent its existence. A police officer is only expected to act in accordance with the facts and circumstances of the given situation with which he is confronted. Thus, it was held in *Cambist Films, Inc. v. Duggan, supra,* that the detectives who had entered the several theaters as customers and who after watching the film called "The Female," decided that on the facts as they viewed, the film was obscene and in violation of 18 P.S. § 4524, could lawfully seize the films and arrest the theater managers, notwithstanding that it was later found in *Cambist Films, Inc. v. Duggan,* 420 F.2d 687 (3rd Cir. 1969), that these facts were not sufficient to classify these films as obscene. The court there held that the facts and circumstances available to the officers at the time of the seizure were such as to provide an ordinary person with a reasonable belief that an offense was being committed.

At page 889 (475 F.2d) it further stated:

"It was, at most, a mistake of fact by the officers in their actions, but this does not make them liable in tort under any standard. See Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288. Police officers are not expected to have a complete knowledge of the intricacies of case law as appellant might try to have us hold when he cites Smith v. Crumlish, 207 Pa.Super. 516, 218 A.2d 596 (1966)."

*Accord, Wells v. Gaspard, supra; Boca Raton v. Coughlin, supra.*

We hold that the issue of probable cause should have the same conclusive effect upon the showing that plaintiff was tried and convicted of the offense for which he was arrested without warrant, even though the conviction is later appealed and dismissed in a false imprisonment action as in a malicious prosecution action. Not having found any evidence of fraud, perjury or other corrupt means as discussed in the part on malicious prosecution which would vitiate the conviction, we affirm the judgment.

Affirmed.

*Richard L. Rost (Padgett, Greeley, Marumoto & Steiner* of counsel) for plaintiff-appellant.

*Robert E. St. Sure,* Deputy Corporation Counsel *(Richard Sharpless,* Corporation Counsel, of counsel), for defendants-appellees.

OPINION OF LEWIS, J., WITH WHOM KOBAYASHI, J., JOINS, CONCURRING IN PART AND DISSENTING IN PART

I concur in the disposition of the case as to the malicious prosecution claim. As to false imprisonment, I would reverse.

Defendants' motion for a directed verdict as to the false imprisonment claim was based solely on the contention of insufficiency of the evidence, without reliance on the district court conviction. In fact, the contention that the rule as to the conclusive effect of the conviction applies to the false imprisonment claim as well as the malicious prosecution claim, was made for the first time during oral argument in this court.

At first blush it appears that plaintiff has not been deprived of the opportunity for presentation of evidence and argument,[1] since he had that opportunity as to the malicious prosecution claim. However, I am of the opinion that there are material differences in the law applicable to the two types of claim which call for withholding of a decision on this new point until such time as a case reaches this court in which the issue has been argued fully.

False imprisonment has been distinguished from malicious prosecution as follows:

> * * * False imprisonment is the invasion of the interest in freedom from unlawful confinement,[2] while a malicious prosecution is the unlawful use of legal procedure to bring about a legal confinement. HARPER AND JAMES, THE LAW OF TORTS, vol. 1, sec. 3.9.

---

[1] See In re Taxes, Hawaiian Land Co., 53 Haw. 45, 52-53, 487 P.2d 1070, 1076 (1971); Fujioka v. Kam, 55 Haw. 7, 9, 514 P.2d 568, 570 (1973).

[2] An unlawful seizure of the person is a violation of a constitutional right under the Fourth Amendment of the United States Constitution and Article I, section 5, of the State Constitution. State v. Joao, 56 Haw. 216, 533 P.2d 270 (1975).

When the action is for malicious prosecution:

* * * the interests involved in the action are afforded only limited protection. Other interests of great social importance are so balanced against the interest primarily protected as to require extensive restrictions on the latitude that would otherwise be allowed in the recovery of damages. It is highly desirable that those reasonably suspected of crime be subjected to the process of the criminal law for the protection of society. * * * *Id.* § 4.2.

The rule that, in an action for malicious prosecution, a conviction conclusively establishes probable cause even though reversed, carries out the policy of limiting actions for malicious prosecution. When added to the requirement that a plaintiff in such an action must have obtained an acquittal or other termination of the criminal proceedings in his favor,[3] it simply means that a favorable termination of the criminal proceeding on the second round comes too late. In false imprisonment, on the other hand, there is no requirement that the criminal proceeding shall have terminated at all.[4]

Moreover, any rule that a subsequent conviction signifies probable cause for an arrest already made would have to be carefully applied and restricted to those cases in which the evidence determinative of guilt was the same information as that which the police officers had at the time of the arrest. Otherwise, an illegal arrest could be justified by investigative work done afterward, resulting in a conviction when there was no probable cause at the time of the arrest. As stated in *Collins v. Owens,* 77 Cal. App. 2d 713, 176 P.2d 372 (1947), even though a person is guilty of an offense the arrest without a warrant may still be illegal.

When the conclusive effect rule is limited in scope as it must be in false imprisonment cases, the desirability of applying the rule at all in these cases is in grave doubt and merits full argument. What is left for application of the rule is the

---

[3] RESTATEMENT OF THE LAW, TORTS, vol. 3, § 658.

[4] Collins v. County of Los Angeles, 241 Cal. App. 2d 451, 50 Cal. Rptr. 586 (1966).

very area of the law where the court's exercise of its supervisory jurisdiction is most important or among the most important. I refer to the delicate balance between the constitutional rights of citizens and the necessities of law enforcement in encounters between the police and the citizens when the police must make on-the-spot decisions. As stated in the comments on proposed Article 250 of the Model Penal Code of the American Law Institute entitled "Disorderly Conduct and Related Offenses," Tentative Draft 13, p. 2:

> * * * this is a most important area of criminal administration, affecting the largest number of defendants, involving a great portion of police activity, and powerfully influencing the view of public justice held by millions of people.

On frequent occasions, this court has been called upon to maintain the balance between constitutional rights and law enforcement necessities, and I see no reason why the court should not undertake this task just because the issue comes before it in a civil action for redress of deprivation of those constitutional rights. This is especially so when the conviction that is given conclusive effect not only has been set aside but also is one that could not have stood under principles of constitutional law already laid down by this court. If police officers proceed under a statute already adjudged invalid, that is not an arrest upon probable cause. *Cf. Pierson v. Ray,* 386 U.S. 547, 555, 557 (1967).

Here, the disorderly conduct statute had not been adjudged unconstitutional but the case is the same. The statute had been brought within constitutional limits by the construction put upon it in *State v. Butler,* 51 Haw. 180, 455 P.2d 4 (1969). That case concerned the very portion of the disorderly conduct statute, HRS § 772-2, paragraph (1),[5] under which

---

[5] HRS § 772-2 *Disorderly conduct.* Any person who with intent to provoke a breach of the peace, or whereby a breach of the peace may be occasioned, commits any of the following acts shall be deemed to have committed the offense of disorderly conduct:

(1) Uses offensive, disorderly, threatening, abusive, or insulting language, conduct, or behavior;

* * * *

plaintiff was charged. The record shows that this portion of the statute as construed in *Butler* could not support the conviction.

The incident occurred April 14, 1971. On that date plaintiff was arrested without a warrant, for disorderly conduct committed in the presence of the defendant officers some time after 9 P.M. at a business address on Cooke Street, Honolulu, where plaintiff had gone in the course of his business as general manager of a burglar alarm company.

According to defendants, they suspected plaintiff of burglary and, as was argued in this court, arrested him after "he refused to identify himself and yelled, talked loud, and defied the police and swore at them in a high burglary area." There were three police officers at the scene. Plaintiff testified he weighed 115 pounds at the time. Officer Lance Carreira, called as an adverse witness by plaintiff, testified:

Q. * * * Before you arrested Mr. House, was there any time you felt the situation was out of control, where you couldn't handle — you or the other two officers couldn't handle it?

A. No, sir.

Officer Gerald Lee, also called by plaintiff as an adverse witness, testified:

Q. You didn't fear that there was going to be a fight between you and him or him and any of the officers?

A. No.

Q. You didn't fear that the situation was getting out of control, at any time, did you?

A. Well, as far as controlling him, fine, but we had some bad time in controlling him from his mouth * * * .

Q. Are you trained — from your training as a police officer to handle situations you can keep the peace without making an arrest?

A. Keep the peace without an arrest? Yes, I think so, I think I can.

On the question of plaintiff's alleged refusal to identify himself, Officers Lance Carreira and Gilbert Ane testified that if plaintiff had presented identification when asked for it, they would have found out that he had legal business in the

area and he wouldn't have been arrested. Officer Gerald Lee put it this way:

A. Well, if we had cooperation, I'm pretty sure everything could have been avoided and nobody would be here, today, sir. * * *

Q. Because he wouldn't show you his identification [he got arrested]?

A. Because of what happened, his conduct, behavior and language.

Plaintiff's conviction in the district court was in the teeth of *State v. Butler, supra,* 51 Haw. 180, 184-85, 455 P.2d 4, 7 (1969), in which the court held:

Our examination of the State's evidence compels us to conclude that a conviction for disorderly conduct cannot be sustained.

Evidence that defendants argued with the police in an insolent and rude manner and that they refused to obey orders did not constitute disorderly conduct without additional evidence showing that a breach of peace was likely to occur. *Thompson v. City of Louisville,* 362 U.S. 199, 206 (1960). By touching the arresting officer Sarant did not commit the offense because the evidence fails to show that the touching was done in a violent, threatening or fighting manner. Also, we believe that the evidence was insufficient to show that a breach of the peace was imminent. * * * [E]vidence fails to show any violence or real threat of violence, any loss of control of the crowd or any fear in the minds of the policemen in charge that the situation would become uncontrolled. * * *

Further, we believe that the legislature did not intend the actions of the defendants complained of and proven at the trial to constitute the crime of disorderly conduct. Otherwise it would be of little value to hold that one has a constitutional right to dissent peacefully and lawfully if it can be done only on pain of arrest and trial.

So here, it was not disorderly conduct for plaintiff to refuse to identify himself. He had the right to remain silent. See *State v. Grahovac,* 52 Haw. 527, 533-34, 480 P.2d 148, 153 (1971). Even if he argued with the police in an insolent and

rude manner and refused to obey orders, that too did not constitute disorderly conduct. It is undisputed that the police had the situation under control and there was no fear in their minds that they couldn't handle it. While the district court conviction was set aside without review on the merits because of lack of prosecution after an appeal for trial de novo, it is a conviction that could not have stood under *Butler*. I would not give it conclusive effect.

Before further review of the verdict directed for the defendants, it is necessary to note the provisions of paragraph (4) of section 772-2, which did not figure in the conviction in the district court but does play a part in this case.[6] It is not clear under which portion of the statute the court directed the verdict.

Though the burden of proof was on defendants to show probable cause for the arrest[7] the court directed the verdict for defendants at the end of plaintiff's case. While the court could take the question of probable cause from the jury and determine it itself if the evidence as to the facts necessary to constitute probable cause was clear,[8] this was not such a case.

The police, called as adverse witnesses, testified as above noted. In connection with the statement that plaintiff was "loud and boisterous" they further testified that at that time three or four people came out of a building on the opposite side of the street. They appeared to be workers there. These people "were looking directly at us."

---

[6] HRS § 772-2 *Disorderly conduct*. Any person who with intent to provoke a breach of the peace, or whereby a breach of the peace may be occasioned, commits any of the following acts shall be deemed to have committed the offense of disorderly conduct:

    * * * *

    (4) Shouts or makes a noise either outside or inside a building during the nighttime to the annoyance or disturbance of any three or more persons;
    * * * *

[7] Lopez v. Wigwam Dep't Stores, 49 Haw. 416, 423, 421 P.2d 289, 293-294 (1966); Ford v. The Oceanic Steamship Co., 3 U.S.D.C. Haw. 239, 241 (1907).

[8] Lopez v. Wigwam Dep't Stores, *supra*, 49 Haw. 416, 422, 421 P.2d 289, 293 (1966).

The police variously testified that they "assumed they [the people across the street] were trying to find out what was occurring," and that they "assumed that's why [because they were annoyed] the people came out of the building." Officer Gerald Lee testified:

A. There were no people, up to the time I observed Mr. House coming, standing in that doorway there but I would say, because of our commotion out there, this caused them to come out.

Q. So the fact that there were people there and Mr. House was talking loudly, it was your feeling that he was already violating the "disorderly conduct" statute?

A. By being abusive, his behavior, his language.

After plaintiff was placed under arrest "an attempt was made to locate these people but they had evidently left the area."

Plaintiff's testimony was that his hearing was impaired temporarily by some work he had done earlier that evening on a bell system that gave out deafening noise, and for that reason "I might have been talking a little louder than usual." As to the people across the street, he testified that he had worked in that area many times, and "at that time of the evening, that's when they close up, and I've seen those people out there, a number of times." As to the cause of his arrest, plaintiff's testimony was in direct conflict with that of the police officers. He testified that he identified himself and the officers turned away but arrested him when he pressed them for information as to who their supervisor was.

With this conflict in the testimony, the case could·not be withdrawn from the jury. *Pierson v. Ray, supra,* 386 U.S. 547, 557 (1967). While the police could not be expected to know the habits of the people across the street,[9] they did know it was an industrial area. The conflict in the testimony as to the volume

---

[9] The test of probable cause is whether the facts and circumstances within the officers' knowledge or of which they have reasonably trustworthy information are such as to warrant a man of reasonable caution in the belief that an offense has been or is being committed. State v. Gustafson, 55 Haw. 65, 69, 515 P.2d 1256, 1259 (1973); State v. Chong, 52 Haw. 226, 231, 473 P.2d 567, 571 (1970); State v. Texeira, 50 Haw. 138, 142, 433, P.2d 593, 597 (1967).

of noise in itself raised a question for the jury. Moreover, as held in *Pierson,* to constitute a defense to false imprisonment the reasonable belief of the officers must be a good faith belief. Plaintiff's testimony assailed the officers' good faith and raised a question as to whether they did in fact believe that he was guilty of disorderly conduct. While the court ruled that, believing what the defendant said, his case still was not sufficient, I cannot agree.

Plaintiff further argues that defendant officers could not justify their arrest of plaintiff for conduct which was provoked by their own actions, citing *Lane v. Collins,* 29 Wis. 2d 66, 138 N.W.2d 264 (1966) and *Pavish v. Meyers,* 129 Wash. 605, 225 P. 633 (1924). On my view of the case, I do not reach this issue.

I would affirm as to the claim for malicious prosecution, and remand for a new trial as to the claim for false imprisonment. In that trial, I would not give conclusive effect to the district court conviction, though I would admit it in evidence together with the record of the disposition of the charge in the circuit court.[10]

---

[10] See Collins v. Owens, *supra,* 77 Cal. App. 2d 713, 176 P.2d 372 (1947).