MARJORIE A. KALILIKANE, Plaintiff-Appellant, *v.* FRANCIS MCCRAVEY, MARGARET POWERS HIRAKAWA, VENETIA K. CARPENTER, and CITY AND COUNTY OF HONOLULU, Defendants-Appellees

NO. 11304

(CIVIL NO. 79344)

MAY 27, 1987

LUM, C.J., NAKAMURA, PADGETT,
HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY LUM, C.J.

This is an appeal from the jury verdict in favor of Defendants-Appellees Francis McCravey, Margaret Powers Hirakawa, Venetia K. Carpenter, and City and County of Honolulu ("Appellees"). Plaintiff-Appellant Marjorie A. Kalilikane ("Kalilikane") contends the court below erred when it excluded evidence of her acquittal on a related criminal charge, and granted Appellees' motion for a directed verdict on the false arrest claim. In addition, Kalilikane avers the court improperly commented on a central issue in the case, thereby committing reversible error. Finally, Kalilikane challenges the jury's verdict as inconsistent and unsupported by the evidence, and asserts the jury improperly failed to award nominal damages. For the reasons stated below, we affirm the judgment.

I.

Shortly after midnight on August 29, 1982, Honolulu Police Officer Francis McCravey was driving his unmarked automobile from Waimanalo toward Hawaii Kai on Kalanianaole Highway when he saw a car ahead weave within its lane and cross over the center line two or three times. Suspecting the driver was under the influence of alcohol, McCravey signalled the driver to stop by turning on his "blue light" and siren. The other vehicle stopped weaving, but did not pull over. McCravey then drove alongside the vehicle and saw that the driver was an unaccompanied woman, later identified as Marjorie Kalilikane. The driver's side window was rolled down. McCravey shouted at Kalilikane to pull over. But

she did not acknowledge the officer's presence. McCravey passed Kalilikane's car and slowed down to enable her to see his license plate and police antenna. He reduced speed, signalling Kalilikane to pull over at the turnout ahead. But Kalilikane pulled in front of the police car and continued driving toward Hawaii Kai. Near the Hawaii Kai golf course, McCravey drove alongside Kalilikane's car, turned on his interior light to enable her to see his uniform, and told her to pull over. Kalilikane said, "I'm not going to pull over for no f____ cops."

McCravey dropped behind and radioed for assistance. Kalilikane finally stopped about one mile into Kalama Valley, a residential area in Hawaii Kai. McCravey arrested Kalilikane for Resisting an Order to Stop a Motor Vehicle (Hawaii Revised Statutes § 710-1027), a misdemeanor.

Officer Margaret Hirakawa arrived to assist in the arrest. Kalilikane refused to get out of her car and shouted obscenities. Hirakawa pulled Kalilikane out of the car, patted her down, and handcuffed her.

When Officer Venetia Carpenter arrived with the transporting vehicle about 45 minutes later, Kalilikane was pacing the sidewalk, shouting profanities. Carpenter pulled Kalilikane toward the transporting vehicle and pushed down on her shoulder, forcing her to sit on the back seat. Carpenter smelled a strong odor of stale alcohol emanating from Kalilikane.

Kalilikane alleged that Carpenter applied a "choke hold" on her until she nearly lost consciousness, and that Carpenter threw her onto the back of the police car. Carpenter denied these allegations.

Kalilikane was released after being booked at the police station. About five hours later, she sought medical treatment at Queen's Hospital emergency room for a swollen neck and superficial neck abrasions. She reported painful swallowing and numbness in her left wrist.

Kalilikane saw her physician, Dr. Wong, two days after the arrest. Dr. Wong noted that a pre-existing cyst on Kalilikane's neck had grown from two centimeters to three centimeters during the preceding five months. Three months later, the cyst was surgically removed by Dr. Liao.

Kalilikane was acquitted in the ensuing criminal prosecution for resisting an order to stop.

On September 12, 1983, Kalilikane instituted this civil action alleging assault and battery against officers Hirakawa and Carpenter, false arrest and intentional infliction of emotional distress against officers McCravey, Hirakawa and Carpenter, and negligent supervision and training against the City and County of Honolulu.

Prior to trial, the trial court granted Appellees' motion *in limine* seeking to exclude any reference to the disposition of the criminal charge against Kalilikane for refusing to stop.

A jury trial was held from September 25, 1985 to October 2, 1985. At trial, Kalilikane referred to publicity surrounding an unsolved murder. Kalilikane explained that she did not heed Officer McCravey's order to stop because she was afraid to stop in the dark, sparsely populated area between Waimanalo and Hawaii Kai.

After the parties rested, Appellees moved for a directed verdict on all theories of liability. The court granted the motion in part, dismissing McCravey as a defendant, and dismissing the "malicious abuse of discretion" and false arrest claims as to all defendants.

On October 3, 1985, the jury returned its special verdict concerning the remaining claims. It found for the defense on all claims except assault and battery, which it determined had been committed by Carpenter. But the jury decided the assault and battery was not a legal cause of injury to Kalilikane and awarded no damages. The court entered judgment in favor of Appellees and awarded costs to Appellees.

The court denied Kalilikane's motion for a new trial on March 6, 1986. This appeal followed.

## II.

Kalilikane contends the lower court erred in partially granting Appellees' Motion for Directed Verdict. We disagree.

The directed verdict is proper if, "giving to the plaintiff's evidence all the value to which it is legally entitled, and indulging every legitimate inference which may be drawn from the evidence in plaintiff's favor, it can be said that there is no evidence to support a jury verdict in [her] favor." *Noguchi v. Nakamura,* 2 Haw.

App. 655, 658, 638 P.2d 1383, 1385 (1982) (per curiam) (quoting *Stewart v. Budget Rent-A-Car Corp.*, 52 Haw. 71, 77, 470 P.2d 240, 244 (1970) ).

Kalilikane limits her argument on appeal to the propriety of the dismissal of the false arrest claim. We limit our resolution of the issue accordingly.

Where an arrest is effectuated without a warrant, the existence of probable cause to arrest is an affirmative defense to an action for false imprisonment. *Towse v. State*, 64 Haw. 624, 635, 647 P.2d 696, 704 (1982). An officer who makes an arrest with probable cause is not liable for false arrest simply because the suspect subsequently is proven innocent. *House v. Ane*, 56 Haw. 383, 391, 538 P.2d 320, 326 (1975). In this case, the warrantless arrest was lawful if McCravey had probable cause to believe a misdemeanor was being committed in his presence. *See House v. Ane*, 56 Haw. at 391, 538 P.2d at 325.

Initially, we note that McCravey's observation of Kalilikane's car weaving in its lane and crossing over the center line justified an investigative stop. Moreover, there can be no doubt that McCravey had probable cause to believe Kalilikane was resisting his order to stop the car. Kalilikane did not deny that she refused to stop, but offered justifications for her refusal. Her explanation was relevant in the underlying criminal prosecution. It was irrelevant to the issue of probable cause in the instant civil action.

Since it was undisputed that Kalilikane refused to heed McCravey's order to stop, McCravey had probable cause to believe Kalilikane was committing a misdemeanor by resisting his order to stop the car. Consequently, the court properly directed the verdict in Appellees' favor on the false arrest claim.

### III.

Kalilikane further contends the court erred in excluding evidence of Kalilikane's acquittal on the underlying criminal charge of Resisting an Order to Stop a Motor Vehicle. She argues a favorable outcome in the criminal matter is essential to causes of action for false arrest and malicious prosecution. This contention fails as to both counts.

As we have noted, the officers did not automatically become liable for false arrest by virtue of Kalilikane's acquittal alone.

Kalilikane is correct in contending that a favorable outcome on the underlying charge is an element of a malicious prosecution claim. However, the complaint did not include such a claim. Plaintiff's counsel stated: "I don't mean to suggest . . . that in this case we have specifically alleged malicious prosecution." Because a disposition favorable to the plaintiff in a prior criminal prosecution is not an element of a cause of action for false arrest, and because Kaililikane did not allege malicious prosecution, the trial court committed no error in excluding reference to the acquittal.

## IV.

After Dr. Liao testified that he removed Kalilikane's cyst because of his concern that it may have been cancerous, the court questioned the witness: "Does it surprise you that Dr. Wong testified yesterday from where you're sitting that this patient requested the surgery? Does it surprise you that Dr. Wong said from the stand that the patient requested the surgery for cosmetic reasons?"

Asserting the court improperly commented on a central issue in the case, Kalilikane contends that the court should have granted her motion for a mistrial. We find no merit in this assertion.

In *Kaowili v. Raymark Industries, Inc.,* 68 Haw. ____, 727 P.2d 67 (1986), we found prejudicial error where the trial judge made a statement which implied a conclusion as to the central issue of liability. The pivotal issue in *Kaowili* was whether the decedent had died of disease caused by inhaling asbestos fibers or dust. During *voir dire,* the trial court stated to a prospective juror: "Now, the plaintiff in this case died of asbestos related disease."

Kalilikane contends the court improperly "suggested that Plaintiff-Appellant had requested the surgery voluntarily and that the surgery was unnecessary." But Dr. Wong testified that Kalilikane wanted to remove the cyst "for cosmetic reasons." And the plaintiff testified that the cyst caused her embarrassment. The court's statement did not implicate the central liability issue — whether Appellees were responsible for the cyst's growth. If Appellee's actions caused the cyst to become enlarged, the fact that it was removed for cosmetic reasons would not negate liability.

## V.

Finally, Kalilikane contends the court should have granted her motion for new trial because: (1) the jury failed to award nominal damages; and (2) the answers given by the jury on the special verdict form were irreconcilably inconsistent and unsupported by the evidence. Neither contention merits reversal.

We turn first to the argument that the jury's failure to award nominal damages invalidates the verdict. Questions 2, 4, 6, 8 and 10 of the Special Verdict form asked the jury whether each alleged claim was a legal cause of injury to Kalilikane. Following question no. 10, this instruction appeared:

If you answered "Yes" to Question 2, Question 4, Question 6, Question 8, or Question 10, then go to Question No. 11. If you did not answer "Yes" to any of these questions, do not answer any further questions, but please date and sign this document and call the Bailiff."

The jury, following these instructions, did not reach question no. 11, which asked the jury to assess special, general and punitive damages.

Appellees contend, and Kalilikane does not deny, that Kalilikane's counsel prepared the Special Verdict form. In any case, Kalilikane did not object to the verdict form, nor did she request an instruction regarding nominal damages.

For purposes of this discussion, we assume the finding that Carpenter committed assault and battery entitled Kalilikane to an award of nominal damages. *See* W. P. Keeton, *Prosser & Keeton on the Law of Torts* § 9 at 40, § 10 at 43 (5th ed. 1984). However, a new trial will not be granted on grounds not called to the court's attention during the trial unless the error was so fundamental that substantial injustice would result. Hawaii Rules of Civil Procedure, Rule 61; *Straub Clinic & Hospital, Inc. v. Chicago Insurance Co.,* 4 Haw. App. 268, 274, 665 P.2d 176, 180 (1983); *Goggins v. Harwood,* 704 P.2d 1282, 1289 (Wyo. 1985); 11 Wright & Miller, *Federal Practice and Procedure: Civil* § 2805 (1973). We find the claim for nominal damages insufficient to warrant reversal of the judgment. *See Schaeper v. Edwards,* 306 F.2d 175, 179 (6th Cir. 1962) (appellate court ordinarily will not reverse trial court's denial of a motion for a

new trial on the ground that nominal damages should have been awarded); 1 *Damages in Tort Actions* § 2.30 (M. Minzer ed. 1985).

Kalilikane next challenges as inconsistent and against the weight of the evidence the jury's determination that Carpenter committed assault and battery, but that her actions were not the legal cause of Kalilikane's injuries.

A conflict in the answers to questions in a special verdict does not automatically warrant a new trial; a new trial will be ordered only if the conflict is irreconcilable. *Vieau v. City and County*, 3 Haw. App. 492, 498, 653 P.2d 1161, 1165 (1982). Further, the jury's verdict need only be supported by substantial evidence, more than a scintilla, to be sustained by an appellate court. *Harkins v. Ikeda*, 57 Haw. 378, 382, 557 P.2d 788, 792 n.6 (1976).

The relevant interrogatories and the jury's responses were as follows:

Question No. 3. Did Venetia K. Carpenter commit assault and battery upon Mrs. Kalilikane?

Yes _X_    No ____

Question No. 4. Was the assault and battery by Venetia K. Carpenter a legal cause of injury to Mrs. Kalilikane?

Yes ____    No _X_

An essential element of any tort is the requirement of "some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered. This connection usually is dealt with by the courts in terms of what is called 'proximate cause,' or 'legal cause.' " W. P. Keeton, *Prosser and Keeton on the Law of Torts, supra*, § 41 at 263.

Question no. 4 asked the jury whether it found the requisite connection between the assault and battery and the injuries complained of — the growth of the cyst and its subsequent removal. The jury received instructions defining legal cause. Kalilikane did not object to the instruction pertaining to legal cause or to the inclusion of question no. 4 on the Special Verdict form.

The jury may have found Carpenter committed assault and battery when she admittedly pushed Kalilikane into the police car. Alternatively, it may have believed Kalilikane's disputed testimony that Carpenter applied a choke-hold on her. In either case, the jury could have believed Kalilikane's cyst-related problems were unre-

lated to Carpenter's conduct. The evidence is consistent with such a finding since Kalilikane's physician testified that he had previously encountered similar growth patterns in cysts. We find the jury's answers are reconcilable and supported by evidence in the record.

Because we find no reversible error in the jury's failure to award damages or in its answers to the questions in the special verdict, we hold that the court below did not abuse its discretion when it denied the motion for new trial.[1]

The judgment is affirmed.

*Robert M. Gordon* on the brief for Plaintiff-Appellant.

*Charlotte J. Duarte,* Deputy Corporation Counsel, on the brief for Defendants-Appellees.

---

[1] As Kalilikane presents no argument in the briefs concerning the propriety of the trial court's award of costs to Appellees, that alleged point of error is deemed abandoned. *Rosa v. Johnston,* 3 Haw. App. 420, 429-30, 651 P.2d 1228, 1236 (1982).