871 P.2d 1231

Michael S. MYERS, Individually and as Special Administrator of the Estate of Marla Colleen Myers, Deceased, Respondent–Appellant,

v.

SOUTH SEAS CORPORATION, a Hawai'i corporation, dba Rudy's Italian Restaurant and Hideaway Lounge, Petitioner–Appellee,

and

Outrigger Hotels Hawai'i, Inc., dba Outrigger Hotels Surf Hotel, Defendants–Appellees,

and

Lautusi Taua, John Does 1–10, Defendants.

Nos. 15086, 15117.

Supreme Court of Hawai'i.

April 15, 1994.

As Amended on Grant of Reconsideration in Part May 4, 1994.

Margaret C. Jenkins (David J. Dezzani with her on the brief; Goodsill Anderson Quinn & Stifel, of counsel), Honolulu, for petitioner-appellee South Seas Corp.

**162**

Paul D. Hicks (David C. Schutter and Stacy Moniz with him on the brief; Schutter & Glickstein, of counsel), Honolulu, for respondent-appellant Michael S. Myers.

Before LEVINSON, Acting C.J., NAKAYAMA, J., YIM, Circuit Court Judge in place of MOON, C.J., Recused, Town Circuit Court Judge in place of KLEIN, Associate Justice, Recused, and WEIL, Circuit Court Judge in place of RAMIL, Associate Justice Recused.

NAKAYAMA, Justice.

This appeal stems from the fatal assault upon decedent Marla Colleen Myers (Marla) by Lautusi Taua (Taua) on the premises of Rudy's Hideaway Lounge (Rudy's) and the Outrigger Surf Hotel (Outrigger). Petitioner–Appellee Rudy's now challenges the decision of the Intermediate Court of Appeals (ICA) to vacate the circuit court's judgment in favor of Rudy's and remand for trial on the sole issue of Rudy's liability.

We affirm the ICA on different grounds and remand the issue of Rudy's liability for a new trial.

## I. BACKGROUND

### A. Facts

Marla and her companion Gordon Wesley Sordoff arrived at Rudy's, a restaurant and lounge located in the lobby of the Outrigger, at about 2:00 a.m. on December 25, 1986. Defendant Taua, dressed in an elf costume and carrying a six foot inflatable godzilla doll, was already present at Rudy's when Marla appeared at the bar.

Marla ordered a glass of wine and proceeded to mingle with some of the other patrons inside the lounge. Shortly thereafter, Marla and Taua began shouting at each other apparently as a result of Marla having knocked over Taua's godzilla doll. The shouting escalated to the point that the two exchanged a number of shoves whereupon Marla retreated to her stool at the bar.

Taua followed Marla and slapped her in the face. When Marla returned the slap, Taua retaliated by punching her, knocking her off the bar stool. As Marla fell, Taua delivered another blow. Taua then jumped up and landed with both feet on Marla's head as she lay on the ground.

Rudy's bartender, Bruce Spewak (Spewak) and another bar patron, Brian Dragger (Dragger), restrained Taua, thus allowing Marla to get up and leave the premises through a back exit. Spewak and Dragger then released Taua who exited the establishment via the front entrance.

During the confrontation between Marla and Taua, another of Rudy's customers alerted Outrigger's night auditor to the incident in the bar. The auditor was stationed upstairs in the lobby of the hotel. Outrigger maintained a central security dispatch center from which security personnel were dispatched when called. The night auditor, in accordance with Outrigger's security procedure, notified Outrigger's private security dispatcher that assistance was needed at Rudy's.

After leaving Rudy's, Marla came upon the night auditor in the hotel lobby. Crying and shaking, she requested police assistance. As she waited with the night auditor for help, Taua left Rudy's with his godzilla doll and spotted Marla. He approached her and twice warned Marla, "Don't ever do that to me again." Taua pushed Marla, causing her to fall backwards and hit her head on the concrete floor. He then proceeded to kick her three or four times in her mid-section as she lay on the ground. Outrigger's security guards arrived at the scene just as Taua was kicking Marla. As Taua turned to leave, he was stopped by the guards and detained until the police arrived.

Marla remained in a coma for several days after the assault and later died after life support systems were removed. Dr. Gonzalo Chong of Straub Clinic & Hospital, Inc. testified that Marla's death was caused by any one or a combination of the blows to her head.

### B. *Procedural History*

Michael S. Myers (Myers), individually and as special administrator of Marla's estate, filed suit on May 18, 1987 and amended the complaint on May 9, 1989. The second amended complaint named Taua, Rudy's, Outrigger and John Does 1–10 as defendants.

After extensive discovery and an entry of default against defendant Taua, the plaintiff proceeded to trial against Outrigger and Rudy's. The claims tried were: 1) Rudy's had negligently sold alcoholic beverages in violation of Hawai'i Revised Statutes (HRS) § 281–78(a)(2)(B) (1985); 2) Rudy's failed to exercise reasonable care to protect its patrons from harm; 3) Rudy's failed to provide proper and/or adequate security; 4) Rudy's created a false appearance of safety upon which Marla relied; 5) Rudy's had acted negligently; 6) Outrigger failed to provide adequate and proper security; and 7) Outrigger had acted negligently.

The jury returned a special verdict, finding that Outrigger was not negligent, and that Rudy's was negligent but not the legal cause of Marla's injury. The circuit court entered judgment on December 19, 1990. On January 17, 1991, Myers filed a notice of appeal from the judgment, alleging that the circuit court's charge to the jury was in error, that the special verdict was irreconcilably inconsistent, and that the circuit court erred in excluding certain opinion testimony and in precluding the introduction of certain statistical evidence.

On appeal, the ICA affirmed the judgment in favor of Outrigger, 10 Haw.App. 331, 871 P.2d 1235 (1992). The amount of damages awarded was also affirmed,[1] but the judgment in favor of Rudy's was vacated and remanded for trial on the sole issue of Rudy's liability. The ICA held further that the trial court's charge to the jury correctly informed the jury of the relevant law and that the court did not err in its decisions as to the admissibility of evidence.

We granted certiorari to review Rudy's contentions that the ICA erred in remanding the issue of its liability[2] for trial.

## II. *DISCUSSION*

Rudy's contends that the ICA erred in finding an irreconcilable conflict in the special verdict.

A conflict in the jury's answers to questions in a special verdict will warrant a new trial only if those answers are irreconcilably inconsistent. *Kalilikane v. McCravey*, 69 Haw. 145, 152, 737 P.2d 862, 867 (1987) (citing *Vieau v. City and County of Honolulu*, 3 Haw.App. 492, 498, 653 P.2d 1161, 1165 (1982)).

The jury's relevant responses to the special verdict were as follows:

1. Was the Defendant RUDY'S HIDEAWAY LOUNGE negligent?

   ANSWER: Yes __X__ No _____

   If your answer to question No. 1 is "No", then do not answer Question No. 2. Go directly to Question No. 3.

2. Was Defendant RUDY'S HIDEAWAY LOUNGE'S negligence a legal cause of injury to the Plaintiff?

   ANSWER: Yes _____ No __X__

"Legal cause" was defined for the jury in Instruction No. 29:

An act or omission is a legal cause of an injury if it was a substantial factor in bringing about the injury.

The law does not say that there can be only one substantial factor which causes an

---

1. The ICA concluded that because neither the sufficiency of the evidence to support the jury's determination of the damages suffered by Marla nor the adequacy of the damages had been questioned by any of the parties, the amount of the award had been conclusively determined.

2. Myers did not seek certiorari review of the ICA's disposition of the points of error decided against him by the ICA. The points of error alleged by Myers as to specific jury instructions, therefore, are abandoned.

injury. On the contrary, many factors, or the conduct of more than one person, may operate independently or together to cause an injury. In such a case, each may be a legal cause of injury.

The jury was also presented with two negligence instructions, numbers 23 and 51. Instruction No. 23 read as follows:

Negligence is the doing of some act which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do, under the circumstances shown by the evidence. It is the failure to use reasonable care.

Instruction No. 51 provided:

If under all the circumstances there is an unreasonable risk of physical harm to a patron of a cocktail lounge or a person on hotel premises from the conduct of a third person, whether intentional or criminal, and if such risk of harm was reasonably foreseeable by the cocktail lounge or hotel in sufficient time through the exercise of reasonable care to have prevented such harm, then a failure to exercise reasonable care to prevent such harm is negligence.

The ICA correctly determined that in order for the jury to find Rudy's negligent under Instruction No. 51, it would have to find that there was "sufficient time through the exercise of reasonable care to have prevented such harm." Therefore, upon finding Rudy's was negligent, the jury would have to conclude that Rudy's failure to act was a legal cause of the harm suffered by Marla. The jury did find Rudy's was negligent; however, it also determined that Rudy's was *not* the legal cause of Marla's injuries. Consequently, the ICA held that the jury's verdict was irreconcilably inconsistent.

Although Myers had objected to Instruction No. 51, the ICA found that "while not a paradigm of legal precision, [Instruction No. 51] was not prejudicial to Myers." We agree that Instruction No. 51 is not an incorrect statement of the law regarding the liability of a cocktail lounge or hotel. It was, however,

an improper instruction because it was not solely a negligence instruction, but rather included elements of causation. As a result, the jury returned an irreconcilable verdict because, as worded, Instruction No. 51 could not permit a finding of "negligence" without a concurrent finding of "legal cause."

The ICA reasoned that, when presented with the general instructions, Nos. 23 and 29, on negligence and causation and the more fact specific Instruction No. 51 on the duties of a cocktail lounge or hotel to its patrons, the jury chose to rely on the specific as opposed to the general instruction. According to the ICA, "[i]t was more reasonable to infer that the jury was guided by and applied the instructions relating to the duty and breach of duty of a cocktail lounge."

Rudy's argues that even if Instruction No. 51 is confusing, one inappropriate jury instruction should not invalidate the jury's verdict if it can be reconciled under another theory. Rudy's contends that, instead of relying on the specific and more confusing Instruction No. 51, the jury could have found negligence and no causation pursuant to Instruction Nos. 23 and 29. Rudy's alleges error on the part of the ICA for its failure to recognize that the special verdict could be reconciled by applying the more general instructions, Nos. 23 and 29.

■ It is not enough that the court find any means by which to reconcile an apparently inconsistent verdict at the expense of disregarding the instructions as a whole, for when considering the issue of jury instructions, "the standard of review is whether, *when read and considered as a whole*, the instructions given are prejudicially insufficient, erroneous, inconsistent or misleading." *State v. Kelekolio*, 74 Haw. 479, 514–15, 849 P.2d 58, 74 (1993) (emphasis added). Thus, Rudy's contention that the ICA erred when it failed to reconcile the special verdict by applying the general as opposed to the specific Instruction No. 51 is without merit.

■ The ICA's reasoning, however, is also unacceptable inasmuch as it, like Rudy's, pre-

sumes the jury chose to rely on one instruction in lieu of another. As a rule, juries are presumed to be reasonable and follow all of the trial court's instructions. *Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987) (as quoted in *Zafiro v. United States,* — U.S. —, —, 113 S.Ct. 933, 939, 122 L.Ed.2d 317 (1993); *Yates v. Evatt,* 500 U.S. 391, 403, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432 (1991)); *see also United States v. A. Lanoy Alston, D.M.D., P.C.,* 974 F.2d 1206, 1210 (9th Cir.1992); *Alaska Airlines, Inc. v. United Airlines, Inc.,* 948 F.2d 536 (9th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1603, 118 L.Ed.2d 316 (1992). This rule "represents a reasonable practical accommodation of the interests of [the parties involved]." *Richardson,* 481 U.S. at 211, 107 S.Ct. at 1709. The jury in the case at hand was instructed to "construe each instruction in the light of and in harmony with the other instructions ... [and to] apply the instructions as a whole to the evidence." Therefore, it is not an "inference," as suggested by the ICA, that the jury followed one instruction as opposed to another that supports the present finding of an irreconcilably inconsistent special verdict, but rather a presumption that the jury followed the instructions and considered the instructions as a whole that dictates the conclusion of irreconcilability. Thus, while we agree with the ultimate conclusion and disposition of the case by the ICA, we respectfully disagree with the underlying rationale.

## III. *CONCLUSION*

Based on the foregoing, we affirm the ICA's holding that the jury's special verdict is irreconcilably inconsistent, but on different grounds. Accordingly, we remand for new trial on the sole issue of Rudy's liability.