191 P.3d 1052

Irene KATO and Ralph Kato,
Petitioners/Plaintiffs–
Appellants,

v.

Frederick FUNARI,
Respondent/Defendant–Appellee,

and

John Does 1–10; Jane Does 1–10; Doe Corporations 1–10; Doe Partnerships 1–10; Doe Non–Profit Entities 1–10; and Doe Governmental Entities 1–10, Defendants.

No. 27237.

Supreme Court of Hawai'i.

Aug. 25, 2008.

Stuart M. Kodish, Honolulu (Ian L. Mattoch, with him on the application), for petitioner/plaintiff-appellant Irene Kato.

Randall Y. Kaya (Dean E. Ochiai, Honolulu, Brenda E. Morris, and Adrian Y. Chang, with him on the response), for respondent/defendant-appellee Frederick Funari.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by MOON, C.J.

On April 22, 2008, this court accepted a timely application for a writ of certiorari, filed March 19, 2008, by petitioner/plaintiff-appellant Irene Kato, requesting this court review the Intermediate Court of Appeals' (ICA) February 12, 2008 judgment on appeal, entered pursuant to its January 29, 2008 summary disposition order (SDO). Therein, the ICA affirmed the Circuit Court of the Second Circuit's (1) December 8, 2004 judgment [1] entered in favor of respondent/defendant-appellee Frederic Funari after a jury trial and (2) April 12, 2005 amended order denying Kato's motion to alter or amend the judgment or, in the alternative, for a new trial. Oral argument was held on August 7, 2008.

Briefly stated, the instant personal injury case stems from a motor vehicle accident between Kato and Funari that occurred on November 2, 2001 in Kahului, on the island of Maui, Hawai'i. The crux of the case centers around an alleged discrepancy between the jury instructions and the special verdict form that raised questions regarding the amount of damages awarded and the effect of the apportionment between Kato's pre-existing injuries and the injuries sustained in the November 2, 2001 accident. Kato contends in her application that the trial court misconstrued the special verdict in Funari's favor and that the ICA erred in affirming the trial court's construction.

Based on the plain language of the jury instructions and the well-settled principle that the jury is presumed to have followed the instructions, we conclude that the trial court improperly modified the jury's verdict. Consequently, we hold that the ICA erred in affirming the trial court's judgment. Accordingly, we vacate the ICA's February 12, 2008 judgment on appeal and the trial court's December 8, 2004 judgment and remand this case to the trial court with instructions to enter judgment consistent with our discussion herein, less any credits or deductions as allowed by law.

I. BACKGROUND

A. Background Information

On November 2, 2001, Kato was driving on an access road in Kahului, on the island of

1. The Honorable Joel E. August presided over the underlying proceedings.

Maui, Hawai'i, when her vehicle was struck by another vehicle driven by Funari. On May 30, 2003, Kato filed a complaint against Funari, alleging that, as a result of Funari's negligent operation of his vehicle, she sustained multiple injuries, suffered mental and emotional distress, and lost income and earning potential.[2]

A jury trial commenced on September 27, 2001. During trial, Kato moved for a directed verdict on the issue of Funari's negligence. The trial court granted the motion; consequently, the only issues before the jury related to legal causation, damages, and the apportionment between Kato's pre-existing injuries and the injuries sustained in the subject accident.[3]

On October 6, 2004—without objection from either party—the trial court instructed the jury, using the Hawai'i Standard Civil Jury Instructions, on, *inter alia*, (1) the elements of general and special damages, (2) the prohibition against speculative damages, and (3) apportionment of damages for pre-existing injuries or conditions, quoted *infra*. The trial court also proposed the following special verdict form to be submitted to the jury for deliberation:

*Question No. 1*. Was the negligence of [Funari] a legal cause of injury to [Kato]? Answer "Yes" or "No" in the space provided below:

Yes: _____ No: _____

If you have answered Question No. 1 "Yes," then go on to answer Question No. 2. If you have answered Question No. 1

"No," do not answer any further questions, but sign and date this document and call the Bailiff.

*Question No. 2*. What were [Kato's] total damages:

| | |
|---|---|
| Property Damages: | $_____ |
| Lost Income: | $_____ |
| Past Medical Expenses: | $_____ |
| Future Medical Expenses: | $_____ |
| General Damages: | $_____ |

*Question No. 3*. Were any of the injuries or pain suffered by [Kato] after the accident caused by conditions which existed and were symptomatic before the accident? Answer "Yes" or "No" in the space provided below:

Yes: _____ No: _____

If you have answered Question No. 3 "Yes," then go on to answer Question No. 4. If you have answered Question No. 3 "No," go on to answer Question No. 5.

*Question No. 4*.[4] State what percentage of the injuries or pain suffered by [Kato] after the accident were caused by conditions which existed and were symptomatic before the accident:

_____

Kato, however, objected to Question Nos. 3 and 4 dealing with the apportionment of injuries. Specifically, Kato argued that the apportionment questions were vague and would "be confusing, misleading and possibly prejudicial to [her]." The trial court rejected Kato's argument, stating that "the jury instructions which we have developed and the

---

2. Kato's husband, Ralph Kato, was also a named plaintiff in the instant action. He alleged that Kato's injuries resulted in his loss of consortium. However, the jury did not find in his favor, which finding was not appealed.

3. Inasmuch as the transcripts of the jury trial were not made a part of the record on appeal, it is unclear what specific evidence was adduced during trial. However, we note that, according to the parties' briefs, evidence at trial consisted of expert testimony regarding the nature and extent of Kato's injuries, as well as the nature and extent to which her injuries were attributable to conditions that existed prior to the November 2, 2001 accident. Specifically, Kato presented evidence that she suffered three injuries as a result of the accident: (1) cervical injury (including headaches); (2) temporomandibular

disorder (TMJ); and (3) carpal tunnel syndrome. Kato claimed that the aforementioned injuries were one-hundred percent attributable to the November 2, 2001 accident. Additionally, Kato presented evidence regarding her lost wages. Conversely, Funari presented evidence—via expert medical testimony—that Kato's injuries, specifically her carpal tunnel syndrome, existed prior to the November 2, 2001 accident. Funari additionally claimed that there was "evidence and/or the inference could [have] been made by the jury ... that [Kato] had not been forthcoming to counsel in discovery, the [trial c]ourt and jury at trial, and her own physicians about her various prior medical conditions."

4. The special verdict form included two additional questions relating to Ralph Kato's claim for loss of consortium, which are not at issue here.

verdict form meet the requirements of the law and respond[ ] to the issues which have been raised in this case[.]" Consequently, the trial court submitted the special verdict form to the jury over the objections of Kato.

On October 7, 2004, the jury returned a verdict in favor of Kato. With respect to Question No. 1 on the special verdict form, the jury determined that Funari was the legal cause of Kato's injuries. As such, in Question No. 2, the jury found Kato's "total damages" amounted to $59,536.55.[5] Additionally, the jury answered Question Nos. 3 and 4 as follows:

> *Question No. 3.* Were any of the injuries or pain suffered by [Kato] after the accident caused by conditions which existed and were symptomatic before the accident? Answer "Yes" or "No" in the space provided below:
>
> Yes : X No : _____

If you have answered Question No. 3 "Yes," then go on to answer Question No. 4. If you have answered Question No. 3 "No," go on to answer Question No. 5.

> *Question No. 4.* State what percentage of the injuries or pain suffered by [Kato] after the accident were caused by conditions which existed and were symptomatic before the accident:
>
> 90%

Thereafter, counsel for Kato and Funari met with eight of the jury members. According to Kato's counsel,

> the jurors were unanimous in telling us that the amounts that they had written in Question No. 2 were already reduced by their apportionment analysis. The jury

was completely confused and did not understand why they were being asked Question No. 3 and Question No. 4. They had no idea that the amounts that they had awarded in Question No. 2 would be further reduced by the percentage they put in Question No. 4.

Kato, therefore, moved for an in-court examination of the discharged jurors, pursuant to Hawai'i Rules of Professional Conduct (HRPC) Rule 3.5(e)(4)(ii) (2007),[6] arguing that there were grounds for a "legal challenge to the verdict and that an in-court examination of the discharged jurors [was] necessary." The trial court denied Kato's motion, reasoning that Kato's "proposed examination [was] not meant to determine objective juror misconduct, but to determine their mental process or intentions in arriving at their answers to the special verdict."

Prior to the entry of judgment, the trial court instructed each party to submit a proposed judgment, taking into account each party's interpretation of the jury's verdict and the application of the covered loss deductible law, Hawai'i Revised Statutes (HRS) § 431:10C–301.5 (2005),[7] because Kato had previously received more than $20,000.00 in personal injury protection benefits. Kato proposed that judgment should be entered in her favor in the amount of $49,536.55, which was calculated by subtracting the maximum statutory covered loss deductible ($10,000.00) from the jury's damage award of $59,536.55. Funari, on the other hand, proposed that the jury's damage award, except for the property damage amount, be reduced by ninety percent pursuant to the jury's finding in Ques-

---

5. Specifically, the jury provided a breakdown of the damages as follows:

| | |
|---|---|
| Property Damages: | $ 1,492.66 |
| Lost Income: | $ 9,606.95 |
| Past Medical Expenses: | $ 23,436.94 |
| Future Medical Expenses: | $ 0.00 |
| General Damages: | $ 25,000.00 |

6. HRPC Rule 3.5(e)(4)(ii) states in relevant part that, "[u]pon leave of the court for good cause shown, a lawyer who believes there are grounds for legal challenge to a verdict may conduct an in-court examination of jurors or former jurors to determine whether the verdict is subject to challenge."

7. HRS § 431:10C–301.5 states that:

**Covered loss deductible.** When a person effects a recovery for bodily injury, whether by suit, arbitration, or settlement, and it is determined that the person is entitled to recover damages, the judgment, settlement, or award shall be reduced by $5,000 *or the amount of personal injury protection benefits incurred, whichever is greater, up to the maximum limit.* The covered loss deductible shall not include benefits paid or incurred under any optional additional coverage or benefits paid under any public assistance program.
(Emphasis in original.) HRS § 431:10C–103 (2005) defines the "maximum limit" as $10,000.00 per person.

tion No. 3, *i.e.*, that ninety percent of Kato's injuries or pain existed prior to the November 2, 2001 accident.

A hearing was held on November 4, 2004, wherein the parties presented their above positions as to the form of judgment that should be entered in the case. The trial court agreed with Funari and reasoned that:

> According to [Kato], as the [trial] court understands [her] position, the $59,536.55 represented the portion of damages that the jury attributed to [Funari] after taking into account apportionment. But if that were the case—you know, if you extend the logic to that reasoning, the jury in fact then would have determined the award without apportionment to be approximately $595,365.50.
>
> In other words, assuming—if you take that logic and assume that [one hundred] percent of her problems were related to the accident, you then would get almost a $600,000 award, which, quite frankly, is an award that is not supported by any evidence in this case.

Thereafter, on December 8, 2004, the trial court entered its judgment, wherein it expressly stated:

> Pursuant to the [s]pecial [v]erdict of October 7, 2004, the jury apportioned ninety percent (90%) of [Kato's] injuries or pain, post accident to conditions that existed and were symptomatic before the accident, thereby reducing the amounts awarded her for lost income, past medical expenses and general damages to $5,804.39.

The trial court further reduced Kato's award by the maximum allowable limit of $10,000.00, pursuant to HRS § 431:10C-301.5, resulting in its conclusion that "$0 [was] owed [Kato] for bodily injury."

Additionally, because the instant case had previously been admitted in the Court Annexed Arbitration Program (CAAP),[8] the trial court entertained, and granted, Funari's request for costs as the prevailing party, pursuant to Hawai'i Arbitration Rules (HAR) Rule 25 (2007),[9] in the amount of $9,460.62. Inasmuch as Funari remained liable to Kato for the property damage award of $1,492.66, the trial court reduced the costs by said amount. Accordingly, judgment was entered on December 8, 2004 in favor of Funari and against Kato in the amount of $7,967.92.[10]

**B.** *Motion to Alter or Amend the Judgment or, in the Alternative, For a New Trial*

On December 16, 2004, Kato moved to alter or amend the judgment or, in the alternative, for a new trial [hereinafter, the motion to amend], pursuant to HRCP Rule 59 (2007),[11] arguing that the trial court's apportionment of the jury's special verdict in its December 8, 2004 judgment was improper because "the jury did consider apportionment and did limit [its] award to [Kato] accordingly." Kato further contended that, inasmuch as the jury apportioned its damages award, the "act of the [trial c]ourt in applying a second apportionment to the jury verdict was error and was also not supported by the evidence that was presented at trial."

In response, Funari contended that the motion to amend was Kato's attempt to take "another bite at the apple" when, in fact, the trial court had correctly rejected Kato's "ar-

---

8. According to Funari, Kato was awarded $168,046.79, inclusive of costs, in the arbitration proceeding.

9. HAR Rule 25 provides:

> (A) The *"Prevailing Party"* in a trial de novo *is the party who* (1) *appealed and improved upon the arbitration award by 30% or more,* or (2) did not appeal and the appealing party failed to improve upon the arbitration award by 30% or more. For the purpose of this rule, "improve" or "improved" means to increase the award for a plaintiff or to decrease the award for the defendant.
> (B) The *"Prevailing Party"* under these rules, as defined above, is deemed the prevail-

ing party under any statute or rule of court. As such, the prevailing party is entitled to costs of trial and all other remedies as provided by law, unless the [c]ourt otherwise directs.

(Emphases added.)

10. We note that $9,460.62 minus $1,492.66 equals $7,967.96, not $7,967.92.

11. HRCP Rule 59(a) states in relevant part:

> A new trial may be granted to all or any of the parties and on all or part of the issues ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the State[.]

gument [as] not supported by the evidence and ... illogical because the jury [could not have] intended to award $580,439.90 [without apportionment], which exceed[ed] the amount [Kato] claimed" at trial. Funari also disputed Kato's reliance on certain cases and, additionally, maintained that, had Kato's counsel believed the special verdict form was misleading, her counsel should have clarified any confusion about the form during closing arguments. On April 12, 2005, the trial court denied the motion to amend. Thereafter, on April 13, 2005, Kato filed her notice of appeal.

## C. *Appeal Before the ICA*

On direct appeal, Kato essentially challenged the trial court's reduction of the jury's award of $59,536.55 in damages by ninety percent. Kato contended that, based upon the jury instructions and the special verdict form, the amount of $59,536.55 represented a post-apportionment, not a pre-apportioned award, as the trial court found. In response, Funari maintained that the trial court properly entered judgment in his favor.[12]

On January 29, 2008, the ICA issued its SDO, rejecting Kato's arguments and affirming the trial court's (1) December 8, 2004 judgment and (2) April 12, 2005 denial of the motion to amend. Specifically, the ICA held that there was no inconsistency between the jury instructions and the special verdict because, "[t]aking both the instructions and interrogatories as a whole, they adequately informed the jury regarding the determination of the percentage of injuries or pain attributable to a pre-existing condition." SDO at 2. Moreover, the ICA reasoned that

the [trial] court's judgment was in conformity with the jury's special verdict. The jury was instructed that it must answer the special [verdict questions] in numerical order. [Question] No. 2 asked the jury for the "total damages" suffered by [Kato] before being asked, in [Question] No. 3 to decide whether her injuries or pain were attributable to a pre-existing condition and, in [Question] No. 4, what proportion of her injuries or pain was attributable to that pre-existing condition. Presuming, as we must, that the jury followed the [trial] court's instructions, the totals entered in response to [Question] No. 2 were pre-apportionment totals. The [trial] court's judgment reflected these totals reduced by the jury's decision on apportionment and was consistent with the jury's verdict.

SDO at 2–3. Kato timely filed her application for a writ of certiorari on March 19, 2008. As previously stated, this court accepted Kato's application on April 22, 2008 and heard oral argument on August 7, 2008.

## II. *STANDARDS OF REVIEW*

### A. *Special Verdict*

 A trial court has complete discretion whether to utilize a special or general verdict and to decide on the form of the verdict as well as the interrogatories submitted to the jury provided that the questions asked are adequate to obtain a jury determination of all factual issues essential to judgment. Although there is complete discretion over the type of verdict form,

---

**12.** In so arguing, Funari relied primarily on the trial court's reasoning, quoted *supra*, that the evidence at trial did not support a verdict of approximately $600,000.00 inasmuch as Kato did not even ask for that amount of damages at trial. In so doing, Funari argued,

the jury was not confused or mislead [sic] in arriving at [its] response to [Q]uestion [No.] 2 of the special verdict form as supported by the verdict itself. Had the jury done so, the jury would have reduced [Kato's] total damages by 90%, the percentage [it] affixed. Specifically, the jury awarded $9,906.95 in lost income, which is not 90% of what [Kato] sought and instead corresponds to the monthly salary of [Kato] multiplied by the length of recovery

period that [one expert] opined. The jury also awarded [Kato] $0 in future medical expenses, not 90% of what [Kato] sought.... Moreover, the jury awarded $23,436.94 in past medical expenses, which does not correspond to a 90% apportionment of [Kato]'s claimed past medical expenses. Similarly, the $25,000 in general damages awarded by the jury, in no way corresponds to a 90% apportionment of the general damages sought.

However, as previously noted, no transcripts of the jury trial are contained in the record. Thus, the specific evidence upon which Funari relies cannot be reviewed in light of the current state of the record on appeal.

the questions themselves may be so defective that they constitute reversible error. *Gonsalves v. Nissan Motor Corp. in Hawai'i, Ltd.,* 100 Hawai'i 149, 158, 58 P.3d 1196, 1205 (2002) (citations and internal quotation marks omitted) (format altered).

B. *Motion to Alter or Amend Judgment, or in the Alternative, for a New Trial*

▮ "This court reviews a [trial] court's decision to grant a motion to alter a judgment pursuant to HRCP Rule 59(e) for abuse of discretion." *Roxas v. Marcos,* 89 Hawai'i 91, 115, 969 P.2d 1209, 1233 (1998) (citation omitted). Likewise, "the denial of a motion for new trial is within the trial court's discretion, and we will not reverse that decision absent a clear abuse of discretion." *Miyamoto v. Lum,* 104 Hawai'i 1, 6, 84 P.3d 509, 514 (2004) (citations and internal quotation marks omitted). "An abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Takayama v. Kaiser Found. Hosp.,* 82 Hawai'i 486, 495, 923 P.2d 903, 912 (1996) (citation omitted) (format altered).

## III. *DISCUSSION*

As previously stated, Kato contends that the ICA erred in affirming the trial court's (1) December 8, 2004 judgment and (2) April 12, 2005 denial of Kato's motion to amend. Kato primarily argues that the trial court erred in reducing the jury's damages award of $59,536.55 by ninety percent inasmuch as the jury had already apportioned the award to account for Kato's pre-existing injuries and pain. In support of her argument, Kato relies on a reading of the special verdict form in conjunction with the jury instructions, as discussed *infra.* Additionally, Kato contends that Question Nos. 3 and 4 did not represent a correct statement of the law of apportion-

ment under *Montalvo v. Lapez,* 77 Hawai'i 282, 884 P.2d 345 (1994).

▮ We begin our discussion with the well-settled principle in this jurisdiction that "the proper amount of damages [to be awarded] . . . is within the exclusive province of the jury, since jurors are the sole judges of all disputed questions of fact." *Knodle v. Waikiki Gateway Hotel, Inc.,* 69 Haw. 376, 385, 742 P.2d 377, 383 (1987) (citation, internal quotation marks, and original brackets omitted).

> When, as here, the trial court "require[s] a jury to return only a special verdict in the form of a special written finding upon each issue of fact," HRCP [Rule] 49(a) [ (2007) [13] ] compels the judge to "give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue."

*Id.* at 383, 742 P.2d at 382 (some brackets in original and some added) (footnote omitted). Put another way,

> the [trial court] should explain the law of the case, point out the essentials to be proved on one side or the other, and bring into view the relation of the particular evidence adduced to the particular issues involved. *And all of this must be done in such a manner that the jury will not be misled.*

*Id.* at 384, 742 P.2d at 382–83 (emphasis added) (citations, internal quotation marks, ellipses, and original brackets omitted). We have also stated that, "[i]n analyzing alleged errors in special verdict forms, *the instructions and the interrogatories on the verdict form are considered as a whole.*" *Gonsalves,* 100 Hawai'i at 158, 58 P.3d at 1205 (quoting *Montalvo,* 77 Hawai'i at 292, 884 P.2d at 355) (emphasis added) (format altered). Moreover,

---

13. HRCP Rule 49(a) provides in relevant part:

The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue.

[a]s a rule, juries are presumed to be reasonable and follow all of the trial court's instructions. This rule represents a reasonable practical accommodation of the interests of the parties involved.... Therefore, *it is **not** an "inference," ... that the jury followed one instruction as opposed to another*[.]

*Myers v. South Seas Corp.*, 76 Hawai'i 161, 165, 871 P.2d 1231, 1235 (1994) (emphases added) (citations, original brackets, and some internal quotation marks omitted). Bearing the foregoing principles in mind, we first examine the jury instructions, as well as the special verdict form, as given to the jury in the instant case.

With regard to (1) the elements of general and special damages, (2) the prohibition on speculative damages, and (3) apportionment of damages for pre-existing injuries or conditions, the trial court properly instructed the jury, using the Hawai'i Standard Civil Jury Instructions, as follows:

### Instruction No. 26

If you find that [Kato] suffered injuries as a result of the accident, [Kato] is entitled to damages in such amount as in your judgment will fairly and adequately compensate her for the injuries which she suffered. In deciding the amount of such damages, you should consider:

1. The extent and nature of the injuries she received, and also the extent to which, if at all, the injuries she received are permanent;
2. The reasonable value of the medical services provided by physicians, hospitals and other health care providers, including examinations, attention and care, drugs, supplies, and ambulance services, reasonably required and actually given in the treatment of [Kato] and the reasonable value of all such medical services reasonably probable to be required in the treatment of [Kato] in the future;
3. The pain, emotional suffering, and disability which she has suffered and is reasonably probable to suffer in the future because of the injuries, if any; and

4. The lost income sustained by [Kato] in the past and the lost income she is reasonably probable to sustain in the future.

. . . .

### Instruction No. 30

Compensation must be reasonable. You may **award *only* such damages as will fairly and reasonably compensate [Kato] for the injuries or damages *legally caused by [Funari]'s negligence.***

You are not permitted to award a party speculative damages, which means compensation for loss or harm which, although possible, is conjectural or not reasonably probable.

### Instruction No. 31

In determining the **amount of damages,** if any, **to be awarded** to [Kato] you must determine whether [Kato] had an injury or condition which existed prior to the NOVEMBER 2, 2001 incident. If so, you must determine whether [Kato] was fully recovered from the pre-existing injury or condition or whether the pre-existing injury or condition was latent at the time of the subject incident. A pre-existing injury or condition is latent if it was not causing pain, suffering or disability at the time of the subject incident.

If you find that [Kato] was fully recovered from the pre-existing injury or condition or that such injury or condition was latent at the time of the subject incident, then you should not apportion any damages to the pre-existing injury or condition.

If you find that [Kato] was not fully recovered and that the pre-existing injury or condition was not latent at the time of the subject incident, **you should make an apportionment of damages by determining what portion of the damages is attributable to the pre-existing injury or condition and *limit your award to the damages attributable to the injury caused by [Funari].***

If you are unable to determine, by a preponderance of the evidence, what portion of damages can be attributable to the

pre-existing injury or condition, you may make a rough apportionment.

If you are unable to make a rough apportionment, then you must divide the damages equally between the pre-existing injury or condition and the injury caused by defendant.

(Emphases added.)

The jury was provided with a written copy of all the instructions, including the above instructions, along with the special verdict form. Additionally, the jury was instructed that it must answer the special verdict questions in numerical order. *See* ICA's SDO at 2–3. As previously stated, the jury answered "yes" to Question No. 1 regarding legal causation, provided an itemized award of damages in answer to Question No. 2, *see supra* note 5. In analyzing the jury's response to Questions Nos. 3 and 4, quoted *supra,* the trial court determined that the jury found Kato had a symptomatic pre-existing condition, which accounted for ninety percent of her post-accident injuries and pain.

Relying upon the jury instructions and the special verdict form, Kato argues that "the ICA was ... clearly mistaken when [it] wrote in [its SDO] that the damages awarded by the jury 'were pre-apportionment totals.' " Specifically, Kato contends, as she did on direct appeal, that:

It is undisputed that the [trial] court instructed the jury to consider the issue of apportionment, to reduce damages if [it] found that apportionment applied to limit [its] award *only* to the damages attributable to the injury caused by Funari. The state of the record is that the jury did consider apportionment and did limit [its] award to [Kato] accordingly. There is no evidence or indication that the jury misinterpreted or failed to apply the [trial] court's instruction to [it].

(Emphasis in original.)

Funari, however, argued in his answering brief that the trial court's judgment was not in error because

[Kato]'s arguments germinate from speculation that there was a "second apportionment" by the trial court because the jury had already apportioned damages in arriving at [Kato]'s damages in response to [Q]uestion [No.] 2 of the special verdict form. There is no evidence[,] however, of a "first" apportionment in arriving at the award of [Kato]'s damages to [Q]uestion No. 2 of the special verdict form.

Given the absence of any evidence of a "first" apportionment, [Kato] asks this court to speculate that the jury considered and utilized [Jury] Instruction No[s. 26, 30, and 31], *simultaneously* in arriving at an award of damages to [Q]uestion [N]o. 2 of the special verdict form. There is no evidence, nor any viable inference the jury considered and utilized all three instructions in answering [Q]uestion [N]o. 2 of the special verdict form, and to so assert as [Kato] does, is simply speculation.

(Emphasis in original.)

■ Here, the jury was specifically instructed that it "must follow all the instructions given" and "must not single out some instructions and ignore others." *See* Jury Instruction No. 1; *see also Myers,* 76 Hawaiʻi at 165, 871 P.2d at 1235 (holding that it is not a permissible " 'inference,' ... that the jury followed one instruction as opposed to another"). With regard to the apportionment of damages, the jury was instructed in Jury Instruction No. 30 that it should "award such damages as will fairly and reasonably compensate [Kato] for the injuries or damages *legally caused by [Funari's] negligence* " and, in Jury Instruction No. 31, to *"limit [its] award to the damages* attributable to the injury *caused by [Funari]."* (Emphases added.) Question No. 2 on the special verdict form asked the jury simply "what were [Kato's] *total damages."* (Emphasis added.) However, the phrase "total damages" was not defined in the jury instructions nor on the special verdict form. Assuming—as we must—that the jury followed Jury Instructions Nos. 30 and 31, the "total" amount of damages awarded by the jury in response to Question No. 2 were those damages solely and totally attributable to the injuries or damages sustained by Kato as a result of the November 2, 2001 accident. Therefore, we hold that—"in view of the instructions to the jury"—the jury "clear[ly] and unambiguous[ly]," *Dias v. Vanek,* 67 Haw. 114, 117,

679 P.2d 133, 135 (1984), awarded Kato $59,536.55 in damages, which damages represented post-apportionment amounts, *i.e.,* were "limit[ed] ... to the damages attributable to the injury caused by [Funari]," as it was instructed to do pursuant to Instruction No. 31. Consequently, the trial court's reduction of the jury's award of $59,536.55 by ninety percent to "satisfy the supposed equities of the case," *id.* at 117, 679 P.2d at 135 (citation and internal quotation marks omitted), was, in our view, an improper modification of the special verdict. Were this court to hold otherwise and agree with the ICA that the trial court correctly reduced the jury's damages award, we would have to presume that the jury believed, notwithstanding the instructions to the contrary, that the term "total damages" included both the pre-existing conditions and post-accident injuries. Such a presumption would be contrary to the principle that the jurors followed the law as was given to them and were guided by the plain language of Jury Instruction No. 30 ("award only such damages as will fairly and reasonable compensate [Kato] for the injuries or damages legally caused by [Funari]'s negligence") and Jury Instruction No. 31 ("limit your award to the damages attributable to the injury caused by [Funari]"). As previously stated, such a presumption is impermissible and contrary to our case law. *Myers,* 76 Hawai'i at 165, 871 P.2d at 1235. Thus, we hold that the ICA erred in affirming the trial court's December 8, 2004 judgment.

On application, Kato additionally contends that Question Nos. 3 and 4, quoted *supra,* incorrectly stated the law of apportionment.[14] However, based on our holding that the jury's answer to Question No. 2 represented a post-apportionment amount of damages, we conclude that the apportionment questions (*i.e.,* Question Nos. 3 and 4) were irrelevant and unnecessarily posed to the jury. We, therefore, hold that Question Nos. 3 and 4 should not have been included on the special verdict form. Accordingly, we need not address Kato's remaining contentions.

We emphasize, however, that our holding today should not be read as a blanket prohibition against the inclusion of apportionment questions relating to pre-existing injuries on special verdict forms. Our holding is limited to the circumstances where the standard *Montalvo* instruction (Instruction No. 31 in this case) is given to the jury, *i.e.,* the jury is instructed to *limit* its award of damages to those damages attributable solely to the defendant's negligence. In such circumstances, apportionment questions are unnecessary and, therefore, improper because it is presumed that the jury will follow the plain language of the *Montalvo* instruction and indicate its apportioned-award of damages on the special verdict form. In other words, when using the Hawai'i Standard Civil Jury Instructions regarding apportionment, the inclusion of apportionment questions on the special verdict form is unnecessary. However, if apportionment questions are to be included on the special verdict form, the jury instructions must be consistent with the questions asked and must clearly apprise the jury of the specific findings it is being asked to make.

## IV. CONCLUSION

Based on the foregoing, we hold that—in view of the instructions to the jury—the jury clearly and unambiguously awarded Kato $59,536.55 in damages, which damages repre-

---

14. With regard to Question No. 3, Kato's argument centers around whether Question No. 3, which asked "the jury to determine percentages based on "conditions which existed and were symptomatic *before* the accident" adequately directed the jury's consideration to conditions that existed and were symptomatic *immediately* before the accident, as the *Montalvo* [c]ourt had done. With regard to Question No. 4, Kato submits that:

Question [No.] 4 did not ask the jury to determine the percentage of *damages* that were caused by pre[-]existing conditions; instead, it

asked the jury to determine the "percentages *of the injuries or pain* suffered by [Kato] after the accident that were caused by conditions which existed and were symptomatic before the accident. The jurors were not instructed, and would have no basis for concluding, that the terms "injuries or pain" were intended by the [trial] court to be synonymous to or coextensive with the defined term "damages," or that those terms included all the elements of damages set forth in [Jury] Instruction No. 26. (Emphases in original.)

sented post-apportionment amounts, *i.e.*, were "limit[ed] ... to the damages caused by [Funari]." Accordingly, we vacate the ICA's February 12, 2008 judgment on appeal and the trial court's December 8, 2004 judgment and remand this case to the trial court with instructions to enter judgment for $59,536.55, less any credits or deductions as allowed by law.[15]

---

15. As previously stated, the trial court awarded Funari costs as the prevailing party pursuant to HAR Rule 25, *see supra* note 9, and applied the statutory covered loss deductible, pursuant to HRS § 431:10C–301.5, *see supra* note 7. We leave the matter of credits and deductions to the trial court to resolve on remand in light of our opinion.